Benjamin BERNSTEIN

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare.

Civ. A. No. 25179.

United States District Court
E. D. Pennsylvania.

March 14, 1961.

Leonard Sarner, Philadelphia, Pa., for plaintiff.

Walter E. Alessandroni, U. S. Atty., Mabel G. Turner, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

LORD, District Judge.

This is an action under § 205(g) of the Social Security Act of August 14, 1935; 49 Stat. 624, 42 U.S.C.A. § 405(g), as amended (hereinafter referred to as the *Act*), which provides for judicial review of the final decision of the Secretary of Health, Education and Welfare (hereinafter referred to as the *Secretary*).

Both parties have filed motions for summary judgment. The parties admit that there is no substantial disagreement as to any matters of fact, and that the case is a proper one for summary judgment here.

### History of the Case

The plaintiff was born on September 15, 1886. On November 24, 1936, while working as a law clerk in the law office of his brother, the plaintiff applied for a Social Security Account Number. He continued to work for his brother in employment covered by the Act until about September, 1951, when he commenced practicing law as a self-employed attorney. On August 29, 1951, the plaintiff applied for Old-Age Insurance Benefits under the Act, and was awarded $68.50 per month, effective September 19, 1951. On August 26, 1954, the plaintiff's wife applied for a wife's insurance benefits under the provisions of the Act, as amended, and was awarded a monthly benefit in the amount of $44.30 effective September, 1954. The plaintiff and his wife received monthly benefits under the Act and its amendments until and including December, 1956. The plaintiff had been, for a number of years, a silent partner in Infanta Knitting Mills. He continued as such in 1955 and 1956, but also continued—as he had in the past—to exercise no voice in the conduct of the partnership business and to take no part in its operations. However, he received a share of the net profits and realized at least $37,000 therefrom in 1955. Furthermore, in 1955 plaintiff's net earnings from his law practice amounted to $1,030.50 and in 1956 his net earnings from said practice amounted to $4,604.60. On March 1, 1957, the plaintiff was notified by the Bureau of Old Age and Survivors Insurance that deductions were being imposed against the benefits paid to him and his wife in 1955 and 1956 (except for those paid for the month of August, 1956) in the full amount of the benefits so paid. The reason given was that his earnings during those years had exceeded the amount which under the Act would permit any payment to be made to him or to his wife for those years. Accordingly, the plaintiff and his wife were instructed to refund the respective amounts of benefits erroneously paid to them. The plaintiff protested this notice and requested that the Bureau reconsider its action in imposing the said deductions. The Bureau affirmed its determination and on July 18, 1957, the plaintiff requested a hearing before a Referee.

That hearing was granted, and was held on February 20, 1958—plaintiff appearing with counsel. On March 12, 1958, the Referee rendered his decision in which he found that the plaintiff and his wife were liable for a refund of the payments made to him and his wife during the year 1956 with the exception of the payment made to them in August, 1956, and that no deductions should be imposed against the benefits paid to him and his wife in 1955.

On March 26, 1958, the plaintiff requested of the Appeals Council that it review the Referee's decision insofar as it ordered a refund, and also with regard to the Referee's interpretation of the effect of the "deductions" provision of the 1954 and 1955 amendments to the Act, as applied to the plaintiff's benefits. The Appeals Council had already decided on its own motion to review the decision of the Referee, and the plaintiff and his attorney appeared before the Appeals Council on May 22, 1958, and argued:

1. That the Act, correctly interpreted, provides that only the income from a business in which the beneficiary actively participates by performing "substantial services" is includable as earnings for deduction purposes.

2. That prior to the 1954 amendment, the plaintiff acquired a vested

right under the Act to benefits which could not be adversely affected by the subsequent amendments of the Act.

3. That if the Act, as amended, is held to apply to the plaintiff, it would deprive him of property without due process of law.

4. That, if deductions are properly imposable so that the payments in question constitute "over-payments", recovery of such overpayments should be waived.

The Appeals Council rendered a decision on June 30, 1958. As to the 1956 payments, it affirmed the Referee's decision which had held that plaintiff and his wife were liable for a refund of the payments made to him and his wife during that year with the exception of the payment made in August of 1956.

As to the 1955 payments, however, the Appeals Council reversed the Referee, and held that plaintiff's earnings during 1955, when calculated in accordance with the provisions of the Act, were also of an amount sufficient to require "deductions" for that year—with the result that the overpayments for these years should be refunded.

Pursuant to plaintiff's request, the Appeals Council on July 10, 1958, revised or amended its decision, stating as its purpose:

" * * * to make it clear that the claimant did not concede that the Secretary had the right to impose deductions, regardless of the amount of his net earnings, because he had not waived his right to raise the constitutional question which was decided adversely to him in the referee's decision." (Tr. 7.)

Thereafter the plaintiff filed his Complaint in this Civil Action. On September 24, 1958, the Chairman of the Appeals Council certified a transcript of the proceedings relating to the claim of Benjamin Bernstein in this case. It is this transcript of the Record to which references will hereafter be made—as in the passage quoted above—as TR., followed by the page number.

On May 27, 1959, the Government's motion for summary judgment was filed. Subsequently, the plaintiff in turn filed his motion for summary judgment. It is these motions which are presently before this Court.

The questions of law raised by the motions (and, as said before, there are no questions of fact to be decided) will be applied to a somewhat narrower scope than the matters necessarily recounted in this history. Thus, the questions of law at hand do not apply to the eligibility benefits of the wife of Benjamin Bernstein—being briefed and argued solely on the law as applicable to plaintiff, Benjamin Bernstein.

Furthermore, there has been no occasion to devote separate discussion to the matter of plaintiff's 1956 benefits. In that year he earned more than $4,600 from the practice of law and can succeed only if he is able to maintain his position under the first division of the argument which follows. That is, only by prevailing in his constitutional argument (that plaintiff's rights became vested prior to the 1954 amendments, and were in the nature of contractual insurance annuity benefits, and that deprivation thereof is a taking of property without due process of law in violation of the Fifth Amendment) may the decision of the Referee and the Appeals Council as to 1956 be overturned.

The first question is:

1. *Were plaintiff's rights to benefits vested before the 1954 Amendments, and are they analogous to rights under a private contract of insurance?*

This question has been stated two ways. The Government takes the affirmative view that

"The 1954 Amendments to the Social Security Act apply to individuals who were entitled to benefits under the Act prior to January 1, 1955, the effective date of said amendments."

But the plaintiff argues that:

"Amendatory statutes to the Social Security Act of 1935 may not be applied by the Social Security Administration to deprive of benefits those who qualified for them prior to the effective dates of the Amendments."

And develops the point as follows:

"Plaintiff, the claimant, is a self-employed attorney who, in September, 1951, became entitled to, and was awarded, old age benefits under the Social Security Act by reason of his former employment as a wage earner.

"Prior to January 1, 1955, a claimant in plaintiff's situation could not be deprived of his old age benefits unless he derived earnings in excess of $1200 from *covered* self-employment in which he performed substantial services. The practice of law was not such covered self-employment.

"From 1951 to 1955, plaintiff received income from the active practice of law and also from a knitwear business wherein he was a silent, inactive partner. Old age benefits were properly paid to him during this period, because his active practice of law was not covered self-employment, and the income derived from the knitwear partnership did not disqualify him from receiving benefits because he performed no personal services whatsoever for that firm.

"The Social Security Act Amendments of 1954, effective January 1, 1955, changed the provisions pertaining to the loss by a claimant of old age benefits by providing that earnings of over $1200 from even *non-covered* employment, for which substantial services were performed, would disqualify a claimant from benefits."

Since plaintiff's next statement contains a reference to "the $2,080 figure" it is appropriate to quote part of Section 203(b) [42 U.S.C.A. § 403(b)] in order to explain subsection (e) from which the $2,080 figure derives.

"§ 203(b) Deductions * * * shall be made from any payment * * * to which an individual is entitled * * * for any month—

"(1) in which such individual is under the age of seventy-two and for which month he is charged with any earnings under the provisions of subsection (e) of this section; * * *."

Subsection (e) provides, with respect to the periods here involved, that when an individual's earnings for a taxable year exceed $1,200, the excess above that figure is "charged" at the rate of $80 per month. The result is that if his earnings for the year exceed $2,080, every month is so "charged" and no benefits are payable.

The plaintiff's statement and argument continues:

"In 1955, plaintiff's earnings from his active law practice were less than $1200, and his income from the knitwear business was in excess of $2080. * * * In subsequent years, plaintiff's earnings as a lawyer and from the knitwear partnership, were each in excess of $2080.

"On May 2, 1957, a demand was made on plaintiff by the Social Security Administration for the refunding of the benefits which had been paid to him and his wife since January 1, 1955. Further benefit payments were suspended until plaintiff's seventy-second birthday in September, 1958, at which time the $2,080 cut-off figure no longer applied to him, and, thenceforth, his benefits were withheld until March, 1960, for an aggregate loss of benefits to plaintiff and his wife in the sum of $5966.80."

On the facts, as thus restated, plaintiff argued at the administrative hearings, and argues here, that

" * * * the retroactive application of the Social Security Act Amendments of 1954, to him whose

right to benefits had matured in 1951 and who had done nothing in the meantime to change his status, would constitute a taking of his property without due process within the meaning of the Fifth Amendment to the Constitution of the United States. * * *

" * * * the 1954 Amendments to the Social Security Act were not intended by Congress to apply to those already receiving their old-age benefits under the existing provisions of the Act, but only to individuals who first became entitled to them after the effective date of the Amendments. In none of the Amendments to the Social Security Act of 1935, including those of 1954, did Congress express an intention to have them retroactively applied."

He cites numerous cases to the effect that statutes are not to be given retroactive effect unless the legislative purpose to do so plainly appears; and that rights to benefits which have vested cannot be destroyed by subsequent disqualifying legislation. With a plethora of quotation and reference to legal authority and Congressional proceedings, he argues that the compulsory deductions from earnings under Title VIII are analogous to premium payments on an annuity insurance policy. The rights to Old Age benefits, he says, were intended by Congress to be of such a character as to preclude their deprivation, once acquired, except as the result of a disqualifying act by the claimant himself.

■■ Many of these arguments may be found in the opinion in a recently decided case, Nestor v. Folsom, D.C.D.C. 1959, 169 F.Supp. 922. Unfortunately for plaintiff's position, however, the vested-rights and insurance-annuity arguments were not followed on the appeal of that case, Flemming v. Nestor, 1960, 363 U.S. 603, at page 610, 80 S.Ct. 1367, at page 1372, 4 L.Ed.2d 1435, since the United States Supreme Court said in reversing the District Court judgment:

" * * * It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments. * * *

"To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands. * * * It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserving to it '[t]he right to alter, amend, or repeal any provision' of the Act. § 1104, 49 Stat. 648 * * *."

During the pendency of the appeal in the last-cited case, summary judgment for the government was granted in Price v. Folsom, D.C.D.N.J.1959, 168 F.Supp. 392—the case of a former salaried employee who opened his private office for law practice in 1954.

The Court of Appeals withheld opinion until the decision in Fleming v. Nestor, 1960, 363 U.S. 603, 80 S.Ct. 1367, 4 L. Ed.2d 1435, and then affirmed the United States District Court for the District of New Jersey in Price v. Flemming, 3 Cir., 1960, 280 F.2d 956. Although the petitioner had attempted to distinguish Nestor, since it involved a deportation, the Court of Appeals simply repeated, as to the Attorney's loss of old age benefits, that the Nestor case:

" * * * expressly rejects the concept of accrued property rights as being a part of the Social Security System. It describes in terms certain the identical benefit with which we are dealing as 'a noncontractual benefit under a social welfare program.'" 280 F.2d 959.

It accordingly deemed the only question to be whether the 1954 amendment was arbitrary, and concluded:

" * * * And with the 1954 Amendment including all income without any exception in the deduc-

tions for benefits under the Act, it is not possible to reasonably suggest that the Congressional decision abolishing preferential treatment for lawyers in this statute is 'a patently arbitrary classification, utterly lacking in rational justification.' " Ibid.

The foregoing decisions of the United States Supreme Court and the Court of Appeals for the Third Circuit, it seems, have foreclosed further reconsideration of plaintiff's argument on this score. It is therefore the opinion of this Court that the 1954 Amendments to the Social Security Act apply to this plaintiff. On this point, therefore, the ruling of this Court is against the position taken by plaintiff and in favor of the defendant.

Had the foregoing ruling been otherwise, there would have been no further question in the case. In the present posture, however, there remains one further question.

The second question is:

2. *Is income from a business in which an individual has not actively participated by performing "substantial services" includable as "earnings" for the purpose of determining deductions from such individual's benefits under the Social Security Act?*

The Appeals Council has determined this question in the affirmative (Tr. 13). In so doing it reversed the Referee's conclusion that claimant's income as a "partner" was return on an investment and not net earnings from self-employment in the year in question, 1955. Plaintiff contends that decision to have been erroneous, maintaining that

" * * * if a claimant receives income from a trade or business, for which he performs no substantial services, such income is not to be included for the purpose of charging him with earnings to reduce the benefits to which he is entitled, even though he may be engaged in another business in which he renders substantial services, but the earnings from which are under $1,200."

With great earnestness and skill, the plaintiff argues that the decision of the Appeals Council is arbitrary, capricious, and unprecedented. He sets out the statutes in question, refers to legislative history and, in particular, Committee Reports: House Report No. 1300, 81st Congress, 1st Session, p. 24 and Senate Report No. 1669, 81st Congress, 2d Session, p. 30. Under the policy of the law as stated therein, together with the Administrative regulations, and the examples and illustrations included in the committee reports, he makes the following statement:

"If the claimant had derived dividend interest or rental income from investments in an amount exceeding even several thousand dollars a year, this would not defeat his right to benefits where his earnings from the practice of law were less than $1200 (Reg. 404.1052). Similarly, since claimant's interest in the knitwear business amounted merely (as the Agency Referee found) [Tr. 41] to an investment of capital, the income from that business likewise should, as stated in the Committee Reports, be treated as an investment which does not defeat his rights to benefits, even though the income may be subject, for other purposes, to self-employment tax."

It may be conceded that if the income had not been from a partnership, the result might have been different. "Partnership income", however, is the language of the statute.

The statute has been recently interpreted in Price v. Flemming, 3 Cir., 280 F.2d 956, 959, rehearing denied Oct. 12, 1960, in the following language:

" * * * And with the 1954 Amendment including all income without any exception in the deductions for benefits under the Act, it is not possible to reasonably suggest that the Congressional decision abolishing preferential treatment for lawyers in this statute is 'a patently arbitrary classification, utterly lacking in rational justification.' "

The dictum that the 1954 Amendment includes *all income without any exception in the deductions for benefits* is certainly not to be disregarded by this Court.

■ Furthermore, the decision of the Appeals Council represents an administrative construction of the Act, and regulations thereunder, which is entitled to great weight, and is not to be overturned unless clearly wrong, or unless a different construction is plainly required. United States v. Short, 9 Cir., 1956, 240 F.2d 292, 298 collecting numerous decisions of the United States Supreme Court:

> " * * * This general rule, of course, 'has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.' Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, 315, 53 S.Ct. 350, 358 [77 L.Ed. 796]; United States v. American Trucking Ass'ns, Inc., 1940, 310 U.S. 534, 549, 60 S.Ct. 1059 [84 L.Ed. 1345]." 240 F.2d at page 298.

Although the present question is one of considerable technicality at best, plaintiff has raised an additional argument on this second point which is of particular subtlety. That contention, not heretofore discussed, refers to the applicability of certain of the Rules and Regulations issued pursuant to the Social Security Act. Speaking of these regulations, as set out in the Appeals Council opinion (Tr. 13, 16) and also submitted separately by the defendant, plaintiff takes the position that certain of the regulations have been misinterpreted by the Appeals Council. Those regulations, Reg. 404.-1050–1052, he points out, refer to § 211 of the Social Security Act; and § 211 of the Act concerns itself with the initial computation of the amount of net earnings from self-employment. That is,

plaintiff argues that these regulations, incorporating § 211, relate only to the building-up of benefits (and contributions) for Social Security. Therefore, he says, "these regulations in no way pertain to the problem of reduction of benefits."

■ This Court cannot agree. To the contrary, the Act refers to "income from partnerships" as includable in earnings for the purpose of "deductions"—that is, for disqualification from Old Age Benefits. The text of these statutory sections may be seen in Appendices A and B herewith (hereafter cited as *App.*). Section 203 of the Act (App. A), providing for reduction of insurance benefits, refers in its parts (b) and (b) (1) to part (e) as to deducting annual earnings in excess of $1,200. 42 U.S.C.A. § 403. In the same section it is provided:

> "(4) (A) An individual's earnings for a taxable year shall be the sum of his wages for services rendered in such year and his net earnings from self-employment for such year, minus (ii) any net loss from self-employment for such year."

Paragraph (b) (App. A) then provides that § 211 of the Act (42 U.S.C.A. § 411) shall be applicable in determining the individual's net earnings from self-employment (with certain exclusions).

As may be seen in Appendix B, which sets out the pertinent parts of § 411 (§ 211 of the Act, hereinafter like other sections to be designated by the section numbers of Title 42 of U.S.C.A.) partnership income is included under "net earnings from self-employment."

It may be quite true, as plaintiff urges, that § 411—particularly as incorporated in the Regulations (App. C herewith)—refers in the first instance to the computation of earnings for the purpose of establishing the earnings base to determine entitlement to benefits. However that may be, *as incorporated in § 403*—and not in some other aspect—§ 411 must be taken, by the plain meaning of the words, to define earnings from self-employment for the purpose of reducing benefits.

The same § 411 specifically excludes a number of kinds of income. In part (1) it exempts rentals from real estate; part (2) excludes dividends and interest; and part (3) exempts certain capital gains or losses. Despite the fact that the same section *includes* income from partnerships, plaintiff argues that his particular partnership relation is such that it is merely return on capital.

In the view of this Court, plaintiff's contention is incorrect. The mention of certain forms of investment income in the list of exclusions, but not of partnership income of *any* sort, by the usual rule of statutory construction is taken to mean that there can be no exception here to the rule that partnership income must be counted as part of total self-employment earnings.

In an attempt to avoid obscuring conclusions by excessive quotation in the body of this opinion, the following parts of the Social Security Administrative Regulations are simply set out in Appendix C: § 404.415 to 404.417 inclusive; and § 404.1051(c), (d) and (g). These sections, together with passages from applicable Congressional Committee Reports, were incorporated in the decision of the Appeals Council, TR. 16–20 incl.

Based on the pertinent sections of the Act, and the last-mentioned administrative regulations, the Appeals Council said (TR. 14):

"* * * In considering the deduction provisions of the Act, particularly as related to the instant case, it might be well to point out that, generally, deductions are imposed against an individual's benefits if he has not *retired*. It is not a question of whether an individual has retired from only one of his business activities. Thus, where a beneficiary's annual earnings are in excess of $1,200, the excess shall be charged at the rate of $80 per month to the last and each preceding month of the year and deductions are imposed for any month charged with such excess in which a wage earner renders services for wages of more than $80, and in the case of a self-employed person the primary test is whether he is still engaged in self-employment. Where one is engaged in self-employment all of his earnings constitute net earnings from self-employment except those specifically excepted by statute, and the earnings from the partnership were not so excepted. In other words, they were clearly not capital gains derived from the sale or exchange or a capital asset as indicated by the claimant."

By the foregoing test, it is clear that plaintiff had not *retired* during any month in 1955 with respect to the practice of law. By that same test, it is clear that plaintiff could have charged any partnership losses against his law practice income during the year in question. § 403(e) (4) (A) (ii), App. A. The plaintiff's contention that his partnership income may not be included is simply not justified by the terms of the statute as it was amended in 1954, and the administrative regulations as promulgated thereunder and interpreted by the Secretary of Health, Education and Welfare through the medium of the Appeals Council.

As heretofore stated, this administrative construction is entitled to great weight. It was the burden of plaintiff here to show that the administrative decision was clearly wrong, and that a different construction was plainly required. United States v. Short, 9 Cir., 1956, 240 F.2d 292, 298. It is the conclusion of this Court that plaintiff has not maintained that burden.

As to point 2, accordingly, the decision of the Appeals Council "that the claimant's benefits for the year 1955 were properly subject to deductions for all months during that year in the full amount of the benefits so paid" is affirmed.

Plaintiff's point 1, having to do with the applicability of the 1954 amendments to the Act as to this plaintiff, has already been decided adversely to the plaintiff. No further questions remain for consideration.

For the foregoing reasons, it is the ruling of this Court that the Motion for Summary Judgment of the Plaintiff is hereby Denied, and that the Motion for Summary Judgment of the Defendant is hereby Granted.

Appendix A (Excerpts from § 203 of the Act, 42 U.S.C.A. § 403).

"(b) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled, until the total of such deductions equals such individual's benefit or benefits under section 402 of this title for any month—

"(1) in which such individual is under the age of seventy-two and for which month he is charged with any earnings under the provisions of subsection (e) of this section.

\*   \*   \*   \*   \*   \*

"(e) (1) If an individual's earnings for a taxable year of twelve months are not more than $1,200, no month in such year shall be charged with any earnings. If an individual's earnings for a taxable year of less than twelve months are not more than the product of $100 times the number of months in such year, no month in such year shall be charged with any earnings.

"(2) \* \* \* Notwithstanding the preceding provisions of this paragraph, no part of the excess referred to in such provisions shall be charged to any month \* \* \* (D) in which such individual did not engage in self-employment and did not render services for wages (determined as provided in paragraph (4) of this subsection) of more than $80.

\*   \*   \*   \*   \*   \*

"(B) For purposes of clause (D) of paragraph (2) of this subsection—

"(i) An individual will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services in such month with respect to any trade or business the net income or loss of which is includible in computing \* \* \* his net earnings or net loss from self-employment for any taxable year. The Secretary shall by regulations prescribe the methods and criteria for determining whether or not an individual has rendered substantial services with respect to any trade or business.

"(ii) An individual will be presumed, with respect to any month, to have rendered services for wages (determined as provided in paragraph (4) of this subsection) of more than $80 until it is shown to the satisfaction of the Secretary that such individual did not render such services in such month for more than such amount.

"(4) (A) An individual's earnings for a taxable year shall be (i) the sum of his wages for services rendered in such year and his net earnings from self-employment for such year, minus (ii) any net loss from self-employment for such year.

"(B) In determining an individual's net earnings from self-employment and his net loss from self-employment for purposes of subparagraph (A) of this paragraph and subparagraph (B) of paragraph (3) of this subsection, the provisions of section 411 of this title, other than paragraphs (1), (4), and (5) of subsection (c) of this section, shall be applicable; \* \* \* "

Appendix B (Excerpts from § 211 of the Act, 42 U.S.C.A. § 411).

"(a) The term 'net earnings from self-employment' means the gross income, as computed under chapter 1 of Title 26, derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such chapter which are attributable to such trade or business, plus his distributive share (whether or not distributed) of the ordinary net income or loss, as computed under section 183 of Title 26, from any trade or business carried on by a partnership of which he is a member; except that in computing such gross income and deductions and such distributive share of partnership ordinary net income or loss—

"(1) There shall be excluded rentals from real estate and from personal property leased with the real estate * * *

"(2) There shall be excluded dividends on any share of stock, and interest on any bond, debenture, note, or certificate, or other evidence of indebtedness, issued with interest coupons or in registered form by any corporation * * *

"(3) There shall be excluded any gain or loss which is considered * * * as gain or loss from the sale or exchange of a capital asset, * * *

*"Self-employment Income:*

"(b) The term 'self-employment income' means the net earnings from self-employment derived by an individual (other than a non-resident alien individual) during any taxable year beginning after 1950; * * *."

Appendix C (Excerpts from 20— Code of Federal Regulations, 1949 ed., as supplemented).

The following rules and regulations, quoted in pertinent parts, and authorized by § 205 of the Act, Tit. 42 U.S.C.A. § 405, were quoted in large part in the opinion below, TR. 16–19 inclusive. Section numbers are those of the Social Security Administrative Regulations.

"§ 404.415 * * * A person shall be deemed to have engaged in self-employment in any month if in such month he renders substantial services, as defined in Section 404.416, in operating a trade or business as owner or partner, even though there may be no earnings from self-employment attributable to his services for such month. For purposes of paragraph (b) (5) of this section, an individual will be presumed with respect to any month to have rendered services for wages, as defined in Section 404.417, of more than $80 until it is shown to the satisfaction of the Administration that such individual did not render services in such month for more than such amount.

"§ 404.416 (defining substantial services):—For the purposes of section 404.415 an individual is presumed to have

rendered substantial services in each month in his taxable year. However, he may submit evidence to establish that in any month in such taxable year he did not render substantial services with respect to any trade or business the net income or loss of which is includible in computing his net earnings from self-employment for any taxable year if such taxable year ends prior to his first taxable year beginning after 1954, or in computing his earnings (but without regard to section 404.417 (b)) for any taxable year if such taxable year begins after 1954. In determining whether an individual has rendered such substantial services in a month, the particular facts in each case will be examined. The following factors, among others, will be considered in making the determination:

(a) The amount of time devoted to the trade or business,

(b) The amount of capital invested in the trade or business,

(c) The nature of the services rendered by the beneficiary,

(d) The seasonal nature of the trade or business,

(e) The presence or absence of a paid manager, a partner, or a family member who manages the business,

(f) The type of business establishment that is involved, and

(g) The relationship of the activity performed prior to the period of retirement with that performed subsequent to retirement.

"§ 404.417 (defining "earnings") When the term "earnings" is used in this subpart and not as a part of the phrase "net earnings from self-employment", it shall mean an individual's earnings with respect to a taxable year beginning after 1954 and includes the sum of his wages, as defined in paragraph (b) of this section, for services rendered in such year and his net earnings from self-employment, as defined in paragraph (a) of this section, for such year, minus any net loss from self-employment, as defined in paragraph (a) of this section, for such year.

"(a) Net earnings from self-employment and net loss from self-employment. An individual's net earnings from self-employment and his net loss from self-employment for the purpose of this section and § 404.416, shall be determined under the provisions of section 211, but without regard to the provisions in paragraphs (1), (4), and (5) of subsection (c); any excess of income over deductions so resulting from such computation shall be his net earnings from self-employment and any excess of deductions over income so resulting shall be his net loss from self-employment. * * *

"§ 404.1051 (Income included in net earnings from self-employment)

"(c) Where an individual is engaged in more than one trade or business within the meaning of section 211(c) of the act and section 404.1057, his net earnings from self-employment consists of the aggregate of the net income and losses (computed subject to the special rules provided in this section) of all such trades or businesses carried on by him. Thus, a loss sustained in one trade or business carried on by an individual will operate to offset the income derived by him from another trade or business.

"(d) The net earnings from self-employment of an individual include, in addition to the earnings from a trade or business carried on by him, his distributive share of the ordinary net income or ordinary net loss from any trade or business carried on by each partnership of which he is a member. An individual's distributive share of the ordinary net income or ordinary net loss of a partnership shall be computed under section 183 of the Internal Revenue Code subject to the special rules set forth in section 211(a) of the act and in this section and to the exclusions provided in section 211(c) of the act and in section 404.1057.

"(g) The net earnings from self-employment of a partner include his distributive share of the ordinary net income or ordinary net loss of the partnership of which he is a member, irrespective of the nature of his membership. Thus, in determining his net earnings from self-employment, a limited or inactive partner includes his distributive share of the ordinary net income or ordinary net loss of the partnership."