ESTATE OF WILLIAM J. ELLSASSER, DECEASED, WILLIAM WARD ELLSASSER, AND ROBERT V. SCHNABEL, EXECUTORS AND CHARLOTTE C. ELLSASSER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8047–71. Filed November 19, 1973.

*Robert V. Schnabel*, pro se.
*Randolph D. Mason*, for the respondent.

242

Raum, *Judge:* The Commissioner determined the following deficiencies in income tax:

| Year | Amount |
| --- | --- |
| 1967 | $215.93 |
| 1968 | 403.20 |

At issue is whether the distributive share of partnership income allocable to a limited partner who contributes no services to the business of the partnership constitutes "net earnings from self-employment" under section 1402(a) of the Internal Revenue Code of 1954. The facts have been stipulated.

At the time of his death on June 5, 1970, and at all times relevant herein, William J. Ellsasser was a resident of the District of Columbia, as was his wife, Charlotte C. Ellsasser, who has continued to remain such a resident, at least up to the time the petition herein was filed. The Ellsassers filed joint Federal income tax returns for 1967 and 1968 with the district director at Baltimore.

Prior to his retirement on June 30, 1966, William Ellsasser was a salesman for Milprint, Inc., a manufacturer of packaging materials. His wages from Milprint, Inc., exceeded $6,600 in 1966. In 1967 he received $3,226.04 in wages, consisting of $826.04 from Milprint (with respect to sales arranged prior to his retirement in 1966) and $2,400 from Ward Estates, Inc., a corporation wholly owned by him which owned and operated a small apartment building in the District of Columbia. In 1968 he received $1,500 in wages from Ward Estates, Inc.

From 1961 until his death in 1970, Ellsasser was a limited partner in Sade & Co., a partnership organized under the laws of the District of Columbia. Sade & Co. was engaged in a stock brokerage business with its principal office in Washington, D.C. During 1967 and 1968 it was a member of the New York Stock Exchange, the American Stock Exchange, the Philadelphia-Baltimore-Washington Exchange, and the National Association of Securities Dealers. Its activities were subject to regulation by the above exchanges, by the National Association of Securities Dealers, and by the United States Securities and Exchange Commission.

Ellsasser was not at any time during his life a member or an allied member of any stock exchange, nor had he attempted to take any examination conducted by the various exchanges or the National Association of Securities Dealers in order to qualify to work in Sade & Co. He was not licensed in any manner to engage in any part of the securities business. From 1961 to June 1970, he was not "employed"

by Sade & Co.; he performed no services for it; he had no desk at its office; and he had no obligation to devote, nor did he devote, time to its affairs in any capacity.[1]

As a limited partner, Ellsasser received a share of Sade & Co's profits. The amount of such share was determined in part by the ratio of his capital contribution to the total capital contributed by all of the limited partners,[2] and in part through negotiation with the general partners with respect to the amount to be paid to all the limited partners. The general partners received a larger percentage of profits than did the limited partners on account of their active participation in the business. Nevertheless, it was recognized that capital was essential to the proper operation of Sade & Co. and the limited partners were treated accordingly.

Ellsasser's distributive share of Sade & Co.'s profits was $13,521.24 in 1967 and $12,433.63 in 1968. On their joint income tax returns for 1967 and 1968, Ellsasser and his wife accurately reported these amounts as other income but without indicating any self-employment tax liability pursuant thereto. In his deficiency notice the Commissioner deemed Ellsasser's "distributive shares of partnership income from Sade & Co. for the taxable years 1967 and 1968 * * * [to be] self-employment income within the meaning of and subject to the tax provided in Chapter 2 of the Internal Revenue Code," and he determined a deficiency for each year accordingly. We hold that his determination must be approved.

Section 1401(a) imposes a tax upon "self-employment income" in respect of old-age, survivors, and disability insurance, and section 1401(b) imposes a companion tax also upon "self-employment income," but in respect of hospital insurance. The combined rate for both taxes was 6.4 percent for both years, but the base to which that rate was to be applied was not the same for these 2 years. Thus, section 1402(b)(1)(D) defines "self-employment income" for 1967 to mean "the net earnings from self-employment," but only that portion which was not in excess of $6,600 minus the amount of wages paid to the individual during the year, while section 1402(b)(1)(E) expands the base for the 4 years subsequent to 1967 so as to exclude from "net earnings from self-employment" that portion which was in excess of $7,800 minus wages paid. By treating Ellsasser's distributive share

---

[1] Under the second paragraph of art. VIII of the Partnership Agreement of Sade & Co., effective during the years in issue, the following restriction appeared :

"The Limited Partners shall not take part in the management of the business or transact any business for the Partnership, and shall have no power to sign for or to bind the firm, but the Limited Partners may from time to time examine into the state and progress of the Partnership affairs and advise the General Partners as to its management."

[2] Under rule 314.12 of the Rules of the Board of the New York Stock Exchange, it is stated that "a limited partner's participation in the profits of his firm should bear some reasonable relationship to the contribution to capital."

of Sade & Co.'s income as "net earnings from self-employment," the Commissioner determined that he had "self-employment income" subject to tax in the amount of $3,373.96 ($6,600 minus wages of $3,226.04) for 1967, and $6,300 ($7,800 minus wages of $1,500) for 1968.

The critical statutory language here in dispute is the term "net earnings from self-employment," with the petitioners contending that Ellsasser's distributive share of Sade & Co.'s income cannot be treated as falling within that provision. If there were no more to the matter than a mere reading of these words, petitioners would have a strong case indeed, for, on the surface at least, passive income of the type which Ellsasser received as a limited partner of Sade & Co. does not fit comfortably within the phrase "net earnings from self-employment." The term "self-employment" suggests activity of some kind on the part of the taxpayer, and here Ellsasser was merely the passive recipient of his share of distributive partnership income. There is involved, however, more than these naked words. We have before us a statutory definition of the critical language, together with a strong and clear legislative history, as well as applicable regulations, which make plain that an initial impression in petitioners' favor must give way to a contrary conclusion.

"Net earnings from self-employment" is a statutory concept and is defined in section 1402(a), in relevant part, as follows:

SEC. 1402. DEFINITIONS.

(a) NET EARNINGS FROM SELF-EMPLOYMENT.—The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(9)[3] from any trade or business carried on by a partnership of which he is a member * * *

A literal reading of these provisions calls for the treatment of Ellsas-

---

[3] Pars. (1) through (8) of sec. 702(a) relate to a partner's distributive share of various specific items of partnership income, deduction, etc. (e.g., capital gains and losses, charitable contributions, etc.), which he is required to take into account separately, and sec. 702(b) provides that the character of the partner's distributive share of any such item shall be determined as if it "were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership." Par. (9) of sec. 702(a), on the other hand, relates to the composite of all the partnership's income and deductions (sometimes characterized as its "ordinary income"), exclusive of the specific items requiring separate treatment in pars. (1) through (8). See S. Rept. No. 1622, 83d Cong., 2d Sess., p. 377.

Petitioners' suggestion that the partnership income herein is more properly to be classified in (a)(8) rather than in (a)(9) is not only wide of the mark, but is also self-defeating. The provisions of (a)(8) ("other *items* of income, gain, loss, * * * to the extent provided by regulations * * *" (emphasis supplied)), obviously do not apply to the *composite* of a partnership's income, deductions, etc. Moreover, if they did apply, then sec. 702(b), quoted above, would treat the partner's share of such income as though it had been directly realized by him from the same source from which it was realized by the partnership, namely, from the conduct of a trade or business.

ser's distributive share of Sade & Co.'s income as "net earnings from self-employment." By its clear language, section 1402(a) comprehends both gross income derived by an individual from a trade or business carried on by such individual *plus* a partner's distributive share of income from a trade or business *carried on by a partnership*. The gross income of an individual from *his* trade or business and a partner's distributive share of partnership income from *its* trade or business are distinct items, separately mentioned in the statute, and subject to different tests for their inclusion in an individual's net earnings from self-employment. Whereas an individual's active role in a trade or business is relevant to the first component of net earnings from self-employment, it is wholly immaterial to the qualification of income arising from a partnership's activities. What is relevant in that regard is (1) whether the *partnership* carries on a trade or business, and (2) whether the recipient of a distributive share is a "member" of such partnership. And since an active business—i.e., a brokerage business— was carried on by Sade & Co., a partnership of which Ellsasser was a "member," it would seem that the statutory definition explicitly requires the treatment of his distributive share of its income as "net earnings from self-employment." Nothing in the statutory definition suggests that a distinction must be drawn between general and limited partners, and the legislative history makes clear that none was intended.

Prior to the enactment of the Social Security Act Amendments of 1950, ch. 809, 64 Stat. 477, self-employed persons were not covered by the Federal Old-Age and Survivors System. Under the 1950 legislation Congress extended old-age and retirement benefits to self-employed persons, and in that connection section 104(a) of that Act (through an amendment adding section 211 to title II of the Social Security Act) defined the term "net earnings from self-employment." Concomitantly, section 208(a) of the same 1950 legislation added section 480 to the Internal Revenue Code of 1939, imposing a tax upon "self-employment income of every individual." At the same time it also added section 481(a) to the 1939 Code, which introduced the term "net earnings from self-employment" to the Code and defined it in precisely the same language as that used in the new provisions of the Social Security Act. It is that definition which was carried over in substantially identical language and became section 1402(a) of the 1954 Code involved herein. In its report on the bill embodying the 1950 legislation, the Senate Finance Committee stated (S. Rept. No. 1669, 81st Cong., 2d Sess., p. 155 (1950)):

> The net earnings from self-employment of an individual include, in addition to the earnings from a trade or business carried on by him, his distributive share

of the ordinary net income or loss from any trade or business carried on by each partnership of which he is a member. * * * The net earnings from self employment of a partner include his distributive share of the ordinary net income or loss of a partnership of which he is a member, *irrespective of the nature of his membership, as, for example, as* [sic] *a limited or inactive member.* [Emphasis supplied.]

It is thus plain beyond reasonable dispute that, regardless of what ambiguities a resourceful mind might read into the words of section 1402(a), Congress intended a limited partner's distributive income to be included within the phrase "net earnings from self-employment," provided that the partnership itself is carrying on a trade or business.

Further indications of the understanding of Congress subsequently appeared in connection with the 1967 addition of paragraph (a)(10) to section 1402 of the Code by section 118(a) of the Social Security Amendments of 1967, 81 Stat. 821, 841. The new provisions dealt with periodic retirement payments in specified circumstances made by a partnership out of current earnings to a retired partner who rendered no services with respect to the partnership business during the taxable year. Congress thought that such retirement payments should thereafter be excluded for all social security purposes, including the self-employment tax. In providing for such exclusion it recognized that unless such payments were excluded they would qualify as "earnings from self-employment." The reports of the House and Senate committees, set forth in the margin,[4] make clear the understanding of the committees that a wholly inactive partner's share of partnership income would constitute net earnings from self-employment, and that therefore a special exception was necessary in the case of a retired partner under the strict conditions specified in the amendatory provisions.

---

[4] See H. Rept. No. 544, 90th Cong., 1st Sess., p. 35:

(d) *Retirement payments made to retired partners.*—Retirement payments (whether received by an employee or a self-employed person) are, in general, not covered under social security for purposes of contributions, benefit computations, and the retirement test. However, *retirement payments made by a partnership to a retired partner from the current earnings of the partnership are generally treated as earnings from self-employment* and are covered under social security. *This is true even though the retired partner performs no services in any trade or business which the partnership conducts* and even though the retirement payments represent the individual's only relationship to the partnership. Your committee believes that partnership payments which are clearly retirement income should be excluded for all social security purposes. [Emphasis supplied.]

Under the bill, payments received by a retired partner from the partnership would be excluded under conditions which assure that the payments are bona fide retirement income. The exclusion would apply where the payments received by the retired partner are made pursuant to a written plan of the partnership which provides for lifelong periodic retirement payments to the partner. It would only apply if the retired partner no longer had any interest in the partnership except for the right to the retirement payments. The exclusion would not apply to retirement payments made in a year in which the partner performed any services for the partnership.

See also S. Rept. No. 744, 90th Cong., 1st Sess., p. 60.

At the risk of belaboring that which is already clear, we note that our conclusion is supported by the case law arising under the corresponding and substantially identical provisions of the Social Security Act which were enacted simultaneously with the provisions embodied in section 1402(a) of the Code. Social Security Act, 42 U.S.C. sec. 411(a) (1969), enacted as sec. 104(a) of the Social Security Act Amendments of 1950, ch. 809, 64 Stat. 477, 502. Just as "net earnings from self-employment" is the touchstone of self-employment taxation, it is likewise the measure of eligibility for social security benefits. 42 U.S.C. secs. 403(b), 411 (a) and (b). In *Bernstein* v. *Ribicoff*, 192 F. Supp. 138 (E.D. Pa.), affirmed 299 F. 2d 248 (C.A. 3), certiorari denied 369 U.S. 887, the plaintiff failed to persuade either the District Court or the Court of Appeals that his interest as a silent partner in a partnership amounted merely to an investment of capital, the income from which was not within the meaning of "net earnings from self-employment" for purposes of reducing his social security benefits. The District Court, in a carefully written opinion, emphasized the statutory dichotomy which renders personal participation in business activity relevant only to the question of an individual's self-employment income, not a partner's (192 F. Supp. at 143) :

It may be conceded that if the income had not been from a partnership, the result might have been different. "Partnership income," however, is the language of the statute.

The court further alluded to section 411's explicit exceptions for certain kinds of income (which exceptions are also present in Code section 1402(a)) and concluded that (192 F. Supp. at 145) :

The mention of certain forms of investment income in the list of exclusions, but not of partnership income of *any* sort, by the usual rule of statutory construction is taken to mean that there can be no exception here to the rule that partnership income must be counted as part of total self-employment earnings.

Cf. *Tyndall* v. *Gardner*, 376 F. 2d 746 (C.A. 4). While *Bernstein* is not necessarily controlling here, we find it highly persuasive, for the relevant statutory provisions in both situations were enacted together in substantially identical language in circumstances indicating that Congress regarded them as being identical in scope. H. Rept. No. 1300, 81st Cong., 1st Sess., p. 91 (1949) ; S. Rept. No. 1669, 81st Cong., 2d Sess., pp. 97–98 (1950). Moreover, the compatibility of the result here with that of *Bernstein* conforms with the congressional policy underlying Federal social security legislation, which requires the courts to interpret the Act liberally, resolving any doubts in favor of coverage. *Rasmussen* v. *Gardner*, 374 F. 2d 589, 594-595 (C.A. 10) ; *David E. Johnson*, 60 T.C. 829, 832 (1973).

Further, if doubt should remain as to the applicability of Code section 1402(a) to William Ellsasser, it cannot survive the impact of section 1.1402(a)–2(g) of the Income Tax Regulations, which states:

> Sec. 1.1402(a)–2. Computation of net earnings from self-employment.
>
> (g) *Nature of partnership interest.* The net earnings from self-employment of a partner include his distributive share of the income or loss, described in section 702(a)(9), of the partnership of which he is a member, irrespective of the nature of his membership. Thus, in determining his net earnings from self-employment, a limited or inactive partner includes his distributive share of such partnership income or loss. * * *

Although petitioners are aware of section 1.1402(a)–2(g), they contend that it is invalid as applied to Ellsasser, reasoning that "Congress couldn't have intended this language to apply to every limited partner." It is well-settled that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and * * * should not be overruled except for weighty reasons." *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501; see also *Bingler* v. *Johnson*, 394 U.S. 741, 749–750; *Colgate Co.* v. *United States*, 320 U.S. 422, 426; *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378; *Brewster* v. *Gage*, 280 U.S. 327, 336; *Textile Mills Corp.* v. *Commissioner*, 314 U.S. 326, 336–339; *Boske* v. *Comingore*, 177 U.S. 459, 470; *Regal, Inc.*, 53 T.C. 261, 263–264, affirmed per curiam 435 F. 2d 922 (C.A. 2); *William F. Sanford*, 50 T.C. 823, 832, affirmed 412 F. 2d 201 (C.A. 2), certiorari denied 396 U.S. 841. And contrary to petitioners' suggestion, it appears that Congress did intend to extend Social Security coverage to every individual limited partner. Since the regulation accurately reflects the legislative purpose, we can perceive no reason to interfere with its application here.

Petitioners have made the argument that Ellsasser's interest in the partnership was like that of a stockholder (see section 1402(a)(2)) or of one with a capital investment and that his passive receipt of profits from the partnership should be treated similarly.[5] The point is, however, that Congress has explicitly classified partnerships differ-

---

[5] In this connection, petitioners have argued that the matter should be resolved by reference to the so-called "entity" theory of partnerships, and a lively controversy has developed between the parties in respect of the "entity" and "aggregate" theories of partnerships. Although the entity theory may be of significance in some circumstances, "No inference is intended * * * that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions." H. Rept. No. 2543, 83d Cong., 2d Sess., p. 59. And in this case we have specific statutory provisions speaking unequivocally of a "distributive share of * * * income" from a "trade or business carried on by a partnership" of which the taxpayer is a "member." In the circumstances, there is no occasion to become enmeshed in the sticky conceptual problems relating to the "entity" theory of partnerships. Cf. *Commissioner* v. *Whitney*, 169 F. 2d 562, 566 (C.A. 2), reversing 8 T.C. 1019.

ently, that its intention was made plain in the reports of the congressional committees, and that if there is to be any change in the law it is one that must be wrought by Congress itself.

*Decision will be entered for the respondent.*