JOSEPH BRANDSCHAIN AND MIRIAM BRANDSCHAIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4995–81.     Filed April 25, 1983.

Joseph Brandschain, pro se.
*Joellyn R. Cattell*, for the respondent.

---

DRENNEN, *Judge*: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PAJAK, *Special Trial Judge*: Respondent determined deficiencies in petitioners' self-employment tax for 1976 and income tax and self-employment tax for 1977 in the amounts of $1,209 and $1,422, respectively. After a concession by petitioners of $264 in additional interest income, the sole issue for determination is whether retirement payments[1] made to petitioner-husband from current earnings of his law firm qualify for the exclusion from self-employment tax under section 1402(a)(10).[2]

## FINDINGS OF FACT

Petitioners, husband and wife, resided in Meadowbrook, Pa., at the time they filed their petition in this case.

Until 1969, petitioner Joseph Brandschain (hereinafter petitioner) was a full-time working partner in the law firm of Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa. (hereinafter the firm). Beginning in 1970, petitioners traveled to Florida for about 4 months of each year. They also spent virtually all of their summers in their condominium in Longport, N.J. Petitioner did not formally become a "retired partner" of the firm until February 1, 1975. Hereinafter we will sometimes refer to petitioner as being retired since he ceased to work fulltime, even though he continued to engage in money-making activities for the firm.

While an active partner, petitioner's principal area of practice was labor law. He was the head of the firm's labor department. Petitioner also served as an impartial labor

---

[1]The parties at times have used the term "pension payments"; the statute uses the term "retirement payments." Since we view the terms as the same for purposes of this case, we will use the statutory terminology.

[2]All section references are to the Internal Revenue Code of 1954 in effect during the taxable years in issue, unless otherwise indicated.

arbitrator and was a charter member of the National Academy of Arbitrators, an association formed in 1947. He was paid for his services as an arbitrator personally, and turned the fees over to the firm. While he was an active partner, firm earnings were distributed to petitioner in the form of withdrawals.

In accordance with the firm's partnership agreement, as restated February 1, 1972 (hereinafter the partnership agreement), petitioner, as a retired partner, was entitled to receive retirement payments. These payments were paid from the current earnings of the firm on a monthly basis.

The partnership agreement provides in section 12(c)(vii), (viii), and (ix) that:[3]

(vii) A Retired Partner shall not be required to perform any services for the firm, but if he chooses to do so, he may continue to practice law with the firm, at a level of activity of his own choosing.

(viii) A Retired Partner will continue to be a member of the firm, entitled to notice of and to attend firm meetings (but without any vote) and to retain such office facilities and to utilize such office services as may be commensurate with the level of activity he chooses to continue.

(ix) The firm shall continue to be entitled to all income realized by a Retired Partner from the practice of law and from other services, such as serving as a fiduciary or director of a corporation, the income from which, in the case of an Active Partner, would be considered income of the firm.

In 1976 and 1977, petitioner served as an impartial labor arbitrator on a number of occasions. He was selected, personally, by joint action of employers and unions, or as a result of their use of panels of arbitrators maintained by the American Arbitration Association and similar agencies. Petitioner continues to be listed as an individual in the membership directory of the National Academy of Arbitrators, using both the firm's address, without the firm's name, and his Florida address.

In 1976, petitioner performed services as an arbitrator for approximately 10 days, which resulted in earnings of $4,750. In 1977, he performed such services for 34 days and received compensation totaling $16,295. As required by the partnership agreement, petitioner surrendered these earnings to the firm. Petitioner billed the employer and union in each case in which

---

[3]The quoted provisions of sec. 12(c) are the only paragraphs of the partnership agreement made part of the record.

he acted as an arbitrator for fees, travel, and miscellaneous expenses. Each of the parties paid one-half of the bill to him by check. Petitioner then endorsed and turned over the checks to the firm.[4]

Lawyers, non-lawyers, and academicians act as labor arbitrators and are members of the National Academy of Arbitrators. Law firms as such do not act as labor arbitrators and are not selected as arbitrators by the employers and unions. In 1976 and 1977, no partners, other than petitioner, or associates of the firm acted as labor arbitrators.

In 1977, the partner who succeeded petitioner as head of the firm's labor department asked him to perform legal services for one client. Petitioner reluctantly attended two negotiating meetings lasting for a few hours. He advised the Philadelphia Academy of Music with respect to the negotiation of a contract. The firm billed the academy for the services of petitioner and others involved in this negotiation.

Petitioner is listed as "of counsel" on the firm's letterhead and continues to have a desk in a room in the firm's offices. He shares the room with a retired secretary. As a retired partner, petitioner did not go to the office on a regular basis when he was in Philadelphia. Sometimes he went once a week, sometimes twice a week, and sometimes there were consecutive weeks in which he did not go to the office.

Petitioner received retirement payments of $39,000 and $43,000 in 1976 and 1977, respectively. He reported these respective amounts on Schedule E of his Federal income tax return for each of these years. Petitioner did not report any of the retirement income as self-employment income. In addition to the conceded issue, respondent determined that petitioner's retirement payments were subject to self-employment tax under sections 1401 and 1402.

### OPINION

The question before the Court is whether retirement payments made to petitioner from current earnings of his law firm, which earnings include his compensation for services as

---

[4]The record is silent as to whether petitioner was reimbursed by the firm for the travel and miscellaneous expenses incurred as an arbitrator during the taxable years in question.

an arbitrator, qualify for the exclusion from self-employment tax under section 1402(a)(10). Since this case appears to be one of first impression,[5] section 1402(a)(10) is set forth in full as follows:

(10) there shall be excluded [from self-employment tax] amounts received by a partner pursuant to a written plan of the partnership, which meets such requirements as are prescribed by the Secretary, and which provides for payments on account of retirement, on a periodic basis, to partners generally or to a class or classes of partners, such payments to continue at least until such partner's death, if—

(A) such partner rendered no services with respect to any trade or business carried on by such partnership (or its successors) during the taxable year of such partnership (or its successors), ending within or with his taxable year, in which such amounts were received, and

(B) no obligation exists (as of the close of the partnership's taxable year referred to in subparagraph (A)) from the other partners to such partner except with respect to retirement payments under such plan, and

(C) such partner's share, if any, of the capital of the partnership has been paid to him in full before the close of the partnership's taxable year referred to in subparagraph (A).

Inasmuch as respondent has conceded that all other aspects of section 1402(a)(10) have been satisfied, our attention will be directed to subparagraph (A).

As a matter of background, section 1402(a)(10) was added to section 1402 by section 118 of the Social Security Amendments of 1967, Pub. L. 90–248, 81 Stat. 821, 841. The provision was enacted to provide a special exception to the general rule that a partner's earnings out of current partnership income are subject to self-employment tax under sections 1401 and 1402.[6] See *Estate of Ellsasser v. Commissioner*, 61 T.C. 241, 246 (1973). Before section 1402(a)(10) became law, retirement payments made by a partnership to a retired partner from current earnings of the partnership were generally treated as earnings from self-employment subject to self-employment tax. H. Rept.

---

[5] We have found no case which has ruled on sec. 1402(a)(10) nor have the parties referred us to such a case. As a matter of fact, neither party cited any cases in the briefs or reply briefs. However, this Court has referred to the legislative history of sec. 1402(a)(10) in *Estate of Ellsasser v. Commissioner*, 61 T.C. 241, 246 (1973), in holding that a limited partner is subject to self-employment tax on his partnership earnings.

[6] Sec. 1402(a)(10) is applicable for taxable years of the retired partner which end on or after Dec. 31, 1967. Sec. 118(c), Social Security Amendments of 1967, Pub. L. 90–248, 81 Stat. 821, 842.

544, 90th Cong., 1st Sess. 35, 147 (1967); S. Rept. 744, 90th Cong., 1st Sess. 60, 230-231 (1967). Now such retirement payments may be excluded from self-employment tax but only if all the provisions specified in section 1402(a)(10) are satisfied. It is obvious from reading the statute and the legislative history that Congress intended the exclusion to be extended only to partnership payments made to a fully retired partner who did not render any services with respect to a trade or business carried on by the partnership during the taxable year in which the payments were received.[7]

Petitioner contends that as a retired partner he "rendered no services with respect to any trade or business carried on by" the firm within the meaning of section 1402(a)(10) by reason of his work as labor arbitrator. We agree with respondent's contentions to the contrary on the facts of this case.

Petitioner tries to make much of the fact that non-lawyers are labor arbitrators and claims that this was not the practice of law by the firm. First, it is well established that a law firm may engage in more than one business. *Philbin v. Commissioner*, 26 T.C. 1159 (1956). Second, without reaching the question of whether the other services are separate businesses, under the partnership agreement, the firm anticipated earnings by active partners from the practice of law and from other services, such as serving as a fiduciary or director of a corporation. See section 12(c)(ix) of the partnership agreement, *supra*. This reflects the fact that receipts derived from activities or transactions incident to the conduct of the business of the partnership constitute income to the partnership, not the individual member. See *Starr v. Commissioner*, 267 F.2d 148 (7th Cir. 1959), affg. on this issue a Memorandum Opinion of this Court; *Abbott v. Commissioner*, 30 B.T.A. 227 (1934); *Hillman v. Commissioner*, 2 B.T.A. 1265 (1925); *Bufalino v. Commissioner*, T.C. Memo. 1976–110.

---

[7]See *Estate of Ellsasser v. Commissioner, supra.* The intent of Congress is evidenced in H. Rept. 544, 90th Cong., 1st Sess. (1967), which states at page 35 that "payments received by a retired partner from the partnership would be excluded under conditions which assure that the payments are bona fide retirement income. * * * The exclusion would not apply to retirement payments made in a year in which the partner performed *any* services for the partnership." The House report further states at page 147 that "the exclusion will be effective with respect to retirement payments received by the retired partner in a year *only* if he renders *no* services in any trade or business conducted by the partnership." (Emphasis supplied.) The same language is set forth in S. Rept. 744, 90th Cong., 1st Sess. 60, 230 (1967).

In *Abbott v. Commissioner, supra,* an attorney earned money as a receiver, surrendered the fees to his law firm, and was taxed on his distributive share of the partnership income. The Board explained in *Abbott* at page 229 that:

The act of surrendering fees * * * constitutes merely the pooling of the fruits of his individual efforts preparatory to a division thereof together with the fruits of the efforts of his co-workers in some agreed ratio. What transpired here is not infrequently the practice where a lawyer is employed by a client to perform a particular service, personally, and where, upon the completion of his task, the client compensates him, personally, either in cash or otherwise. Naturally, if he is a member of a copartnership, it is his duty, in the absence of an agreement to the contrary, to surrender such fees to the partnership fund. The partnership should include them in its gross income, and the partners are taxable on their distributable shares of the partnership net income without any deduction for amounts individually earned which become a part of the partnership income.

In *Hillman v. Commissioner, supra,* the taxpayer was a member of a partnership. He earned a salary as a consulting engineer for Sloss-Sheffield Steel & Iron Co. He endorsed the checks to the partnership, and the salary was held to be partnership income.

With respect to petitioner, under the doctrine of ejusdem generis, we find that his services as an arbitrator fall within the class of the "other services" described in paragraph 12(c)(ix) of the partnership agreement. In fact, petitioner and his firm likewise construed that agreement. The firm required petitioner to contribute to the firm's earnings "all income realized" from such services, and petitioner did so before and after his retirement. As a retired partner, he made contributions to the firm's earnings in the amounts of $4,750 and $16,295 in 1976 and 1977, respectively.

In brief, under the partnership agreement all partners, active and retired, were required to contribute all income earned from professional services to the firm's earnings. The retired partners received a fixed portion of the partnership pie; the active partners divided the remainder.

It is undisputed that petitioner formally retired from the full-time practice of law in 1975 but that he did not fully retire from the arbitration work he had been doing. As before his formal retirement, petitioner was required to, and did, contrib-

ute the fees he was paid for these services to the firm's earnings.[8] Petitioner's firm considered that money its income, and the firm continued to conduct at least a part of its trade or business through petitioner. Although not part of the record, we take judicial notice of the firm's most recent card in 6 Martindale-Hubbell Law Directory 1312B (1982), which described petitioner as follows:

> Joseph Brandschain, born Philadelphia, Pennsylvania, 1904; admitted to bar, 1928, Pennsylvania. Legal education, University of Pennsylvania (LL.B., 1928). Editor, University of Pennsylvania Law Review, 1927–1928. Referee and Mediation Officer, N.W.L.B., 1942–44. Commissioner of Conciliation and Arbitrator, U.S. Conciliation Service, 1946–47. Member, Florida Public Employees Relations Commission, 1974–1975. Charter Member, National Academy of Arbitrators.

It appears that the firm is still holding petitioner out as an arbitrator, although it is possible that the firm merely may be evidencing its respect for petitioner and his reputation as a lawyer and arbitrator.

Furthermore, we cannot overlook the fact that petitioner remained a member of the firm, that he continued to engage in some of his preretirement partnership activities, that he earned money from such activities, that he contributed that money to the earnings of the firm, and that his retirement payments came from current earnings. We do not believe the special exclusion of section 1402(a)(10) was extended by Congress to this kind of activity. See *Estate of Ellsasser v. Commissioner*, 61 T.C. 241, 246 (1973). To the contrary, Congress expressly provided that the exclusion from self-employment tax applied only if "*no* services with respect to *any* trade or business carried on by such partnership" were rendered by the retired partner. (Sec. 1402(a)(10)(A). Emphasis supplied.)

Petitioner's contention that his arbitration activities were not a trade or business carried on by his firm is contradicted by the facts. Petitioner readily admits that while he was a full-time practicing lawyer with the firm, he engaged in arbitra-

---

[8]We were not favored by petitioner with the pertinent paragraphs of the partnership agreement detailing the manner in which his pension is computed. Nevertheless, we have accepted his testimony that his arbitration earnings did not increase his retirement payments and were not a quid pro quo for them. In any event, under sec. 1402(a)(10), the test is not whether services were voluntary or required but whether they were rendered.

tion work and earned fees from that work. He further admits that it was proper for him to turn these fees over to the firm and then receive firm withdrawals representing his share of total firm earnings. The same arrangement persisted after petitioner retired from the full-time practice of law, although another member of the firm took over the labor department in the firm after petitioner's retirement. Neither can we accept petitioner's argument that his post-retirement arbitration activities constituted the performance of judicial functions rather than the practice of law. This case is not like *Hamm v. Commissioner*, 683 F.2d 1303 (10th Cir. 1982), affg. a Memorandum Opinion of this Court, where petitioner terminated his partnership prior to the year in which he earned compensation for judicial duties. Here petitioner remained a retired partner and continued to carry on some of his preretirement partnership activities. We find that petitioner was a labor arbitrator before and after his retirement and that such activity was a part of the trade or business carried on by his firm through him. See *Abbott v. Commissioner, supra*; *Hillman v. Commissioner, supra*. We conclude that, under the particular facts of this case, petitioner's retirement income was not excluded from self-employment income under section 1402(a)(10).

Nor can we make any allocations between excludable and nonexcludable retirement payments. Section 1.1402(a)-17(c), Income Tax Regs., explicitly states in the flush language that:

By application of the conditions set forth in this subparagraph, either all payments on account of retirement received by a retired partner during the taxable year of the partnership ending within or with his taxable year are excluded or none of the payments are excluded. * * *

Respondent argued in the alternative that the legal services rendered by petitioner in connection with two meetings on behalf of a client of the firm in 1977 precluded petitioner's retirement income for that year from being excluded from self-employment income under section 1402(a)(10). Petitioner argued that the few hours of admittedly legal services rendered in that respect should be disregarded on a de minimis basis. Because we agree with respondent on his primary argument in this case, we need not consider his alternative argument with respect to the year 1977, and we refrain from doing so.

We are pleased that petitioner, who has had a long and distinguished career, is so fortunate as to be able to carry on

part of his professional activities in his retirement years. Unfortunately for petitioner, under the circumstances of this case, we are compelled to sustain respondent's determination on the self-employment tax issue for the 2 years in question.

*Decision will be entered for the respondent.*