### MAYES et al. v. UNITED STATES.

Civ. No. 2749.

United States District Court
E. D. Oklahoma.

Aug. 5, 1952.

962

C.A. § 1346(a)(1). The United States filed a counterclaim pursuant to 28 U.S.C.A. § 1346(c) and Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

### Opinion.

Sometime during the year 1941, W. B. Mayes and his son W. B. Mayes, Jr., entered into a partnership agreement whereby they were to own, manage, lease and rent real estate, manage farms, do accountancy work, and other various undertakings. There was also an agreement between father and son to the effect that all income earned by each would be contributed as partnership income and all such income would be divided on a 60-40 basis to the partners, the father to receive 60%. This partnership arrangement was continued through the year 1946.

During the years from 1943 to 1946, inclusive, W. B. Mayes was employed as an accountant at Pryor, Oklahoma, in connection with the construction and maintenance of the Choteau Powder Plant. During that time he received a salary for his personal services as an accountant and his salary checks were paid to him personally. This money was turned over to the partnership and for each of the years involved the money he so earned was included in the partnership return. The division of profits from the partnership being on a 60-40 basis, the taxpayer W. B. Mayes did not include the full salary for his personal services in his income tax returns for the years 1943 through 1946. It was the salary treatment by the taxpayer which gave rise to the suit for a refund resulting from a deficiency assessment by the Collector of Internal Revenue.

The taxpayer W. B. Mayes filed returns for the years 1943 and 1944 individually, and in 1945 he and his wife filed a joint return. The taxpayers, W. B. Mayes and Ruth Claire Mayes, filed individual returns on a community property basis for the year 1946. All income taxes for the years involved were paid on the reported income.

Within the time allowed by the provisions of the Internal Revenue Code, the Collector of Internal Revenue made deficiency assessments against the taxpayers

Malcolm E. Rosser, Muskogee, Okl., for plaintiffs.

Cleon A. Summers, U. S. Atty., and Francis Stewart, Asst. U. S. Atty., Muskogee, Okl., for defendant.

WALLACE, District Judge.

This is an action to recover income taxes alleged to have been erroneously assessed and collected from the plaintiffs. Jurisdiction of the court is based upon 28 U.S.

in various amounts for each of the years involved. These deficiency assessments were duly paid under protest by the taxpayers and claims for refunds for each of the years were filed within two years after the taxes sought to be recovered were paid as required by Section 322(b) of the Internal Revenue Code, 26 U.S.C.A. § 322(b). Each of the claims for refund were rejected by the internal revenue department.

The total amount sought to be recovered by the taxpayers is $740.68, the deficiencies assessed and paid being as follows: for the year 1943, $204.10 including interest; for the year 1944, $226.45 including interest; for the year 1945, $160.36 including interest; and for the year 1946, $149.77 including interest.

 So far as the suit for refund is concerned, the identical problem is involved for each of the years for which a refund is claimed. The Commissioner took the position that income earned by W. B. Mayes should be reported as his income alone and thus arrived at the deficiency assessments for each of the years in question. The position taken by the taxpayers is that there was a valid partnership agreement and that Mayes could legally contract with his son to turn over his salary to the partnership and then distribute it as partnership income. From the facts and circumstances appearing on the trial of the case, the court can come to no other conclusion than that the taxpayer is not entitled to the refund as sought. There is no question that there was a valid partnership existing, this is conceded by the Government, but the partnership was not an accountancy firm which was hired to work at the Choteau Powder Plant. W. B. Mayes was hired as an individual to do the accountancy work for which he received a salary, and all of that salary must be reported by him as his individual earnings. As was said in the case of Saenger v. Commissioner, 5 Cir., 69 F.2d 631, 632, referring to the case of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731:

"* * * The rule of the Earl Case, while made graphic by a figure, is more than a figure of speech. It is an expression of the simple truth that earned incomes are taxed to and must be paid by those who earn them, and unearned incomes to those who own the property or right that produced them, not to those to whom their earners or owners are under contract to pay them. It establishes once for all that no device or arrangement, be it ever so shrewdly and cunningly contrived, can make future earnings taxable to any but the real earner of them, can make future incomes from property taxable to any but the owner of the right or title from which the income springs."

It follows that the suit for refund filed by the taxpayers is without merit and the United States must prevail in this action insofar as the suit for refund is concerned.

 The counterclaim filed by the United States is based upon an additional deficiency assessment made for the years 1945 and 1946. The additional deficiency assessment was based upon the following information which came to the attention of the Collector of Internal Revenue after the first deficiency assessment had been made and paid by the taxpayers. On or before March 15, 1946, the taxpayers filed a joint return for the calendar year 1945, reporting a gross income of $3,298.32 and a tax liability of $148.00. The gross income was increased by $667.03 for the salary earned by W. B. Mayes as an accountant, making the total gross income $3,965.35, and the tax was paid on this amount under protest for which a refund heretofore disposed of was sought. It was subsequently determined that the taxpayers had received taxable income of $1,591.35 during the year 1945 which was not reported. This figure was arrived at by a disallowance of depreciation on office equipment used by the partnership in its business and the addition of an alleged short term capital gain from the sale of realty.

On March 13, 1951, the taxpayers were notified pursuant to the provisions of Section 272(a) of the Internal Revenue Code, 26 U.S.C.A. § 272(a), of a proposed deficiency assessment of income tax for the year 1945 in the amount of $461.17 plus a negligence penalty of $23.06, and on

April 6, 1951, the Commissioner of Internal Revenue made a jeopardy assessment against the taxpayers for the year 1945 in the total amount of $624.25, consisting of income tax in the sum of $461.17, penalty of $23.06, and interest of $140.02.

On or before March 15, 1947, each of the taxpayers filed separate returns for the calendar year 1946, each reporting a gross income of $1,239.32 and a tax liability of $22 each. The gross income was adjusted by the first deficiency assessment by including the salary of W. B. Mayes, making the total gross income $1,640.73, and the tax was paid on this amount under protest, for which a refund heretofore disposed of was sought. It was subsequently determined that the taxpayers had each received taxable income of $645.68 during the year 1946 which was not reported. Again this figure was arrived at by a disallowance of depreciation on office equipment and an alleged short term capital gain from the sale of realty.

On March 13, 1951, the taxpayers were each notified pursuant to the provisions of Section 272(a) of the Internal Revenue Code, of a proposed deficiency assessment of income tax for the year 1946 in the amount of $111 each, plus a negligence penalty of $5.55 each, and on April 6, 1951, the Commissioner of Internal Revenue made a jeopardy assessment against each of the taxpayers for the year 1946 in the total amount of $143.59 each, consisting of income tax in the amount of $111, penalty of $5.55, and interest of $27.04.

The taxpayers take the position that the additional assessment, basis of the counterclaim, is barred by the statute of limitations; that no assessment could be made for 90 days pending the time during which the taxpayers had a right to file a petition with the Board of Tax Appeals for a redetermination of the deficiency; and furthermore that even if this position is erroneous that there was no income which was omitted from their tax returns. The statute of limitations where 25% or more of the gross income is omitted from the tax return is five years. Section 275(c), Internal Revenue Code, 26 U.S.C.A. § 275(c). For both the years 1945 and 1946 there

was more than 25% omitted from the gross income as alleged in the counterclaim, thus the five year statute of limitations applies. A deficiency notice was mailed to the taxpayers on March 13, 1951, two days before the running of the statute of limitations. This deficiency notice is authorized by Section 272(a) (1) of the Internal Revenue Code, which also provides that the taxpayer has a period of 90 days in which to appeal to the Board of Tax Appeals for a redetermination of the deficiency and that during this time no assessment may be made.

The taxpayers point out that an assessment was made on April 6, 1951, more than five years after the returns were filed, and that an assessment was made before the 90 day period for a petition for redetermination had been lodged with the Board of Tax appeals. However, Section 273 of the Internal Revenue Code, 26 U.S.C.A. § 273, relating to jeopardy assessments overcomes the objection of the taxpayers as to the prohibition on assessments during the 90 day period, and, Section 277 of the Internal Revenue Code, 26 U.S.C.A. § 277, provides that the sending of a deficiency notice suspends the running of the statute of limitations provided for in Section 275 during the period for which the Commissioner is prohibited from making an assessment or beginning distraint or a proceeding in court for its collection. A similar situation was presented in the case of American Equitable Assurance Co. of New York v. Helvering, 2 Cir., 68 F.2d 46, and it was held that a jeopardy assessment was valid where a deficiency notice had been sent to the taxpayer on the day before the statute of limitations would have run.

Rule 13(a) of the Federal Rules of Civil Procedure provides for compulsory counterclaims, and 28 U.S.C.A. § 1346(c) provides that:

"The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section."

It follows that this court has jurisdiction of the counterclaim and that the counter-

claim is not barred by the statute of limitations. The main question remaining is whether or not the taxpayers actually received a short term capital gain on the sale of realty for the years 1945 and 1946, since the disallowance on depreciation is comparatively insignificant and would not materially alter the outcome regardless of the correctness of the ruling of the Commissioner.

■ During the month of April, 1945, the taxpayer purchased real estate located at 804 North C. Street, Muskogee, Oklahoma, for $6,600. During the same month this property was deeded to the American Reserve Life Insurance Company, the deed reciting a consideration of $7,500. During the month of December, 1945, the taxpayer purchased real estate located at 304 Fredonia Street, Muskogee, Oklahoma, for $2,500 and the same day the property was deeded to the American Reserve Company, the deed reciting a consideration of $4,000. During the month of May, 1946, the taxpayer purchased real estate located at 512 North C. Street, Muskogee, Oklahoma, for $4,600. During the same month this property was deeded to American Reserve Company, the deed reciting a consideration of $6,500. The record also shows that a mortgage which the American Reserve Life Insurance Company had on the Mayes home was released by Mr. Mayes, as president of the company, in 1945. These are the transactions which the Government relies upon to establish the short term capital gains by the taxpayers, and its entire evidence consisted of the deeds of conveyance.

The evidence during the trial disclosed that W. B. Mayes is the elected president of the American Reserve Life Insurance Company, a mutual company organized under the laws of the State of Oklahoma. He has taken an active part in the affairs of the company and has a personal interest in seeing that the company is successful, although his pecuniary interest is solely that of an elected officer and a small policyholder. The insurance company was begun in 1922, but it was several years later that Mr. Mayes became associated with the company. Mr. Mayes testified that he, as an officer of the company, was responsible to the Insurance Commissioner of the State of Oklahoma to see that assets of the company were maintained so as to keep the company solvent. He also testified that the insurance company could not purchase realty, but that he as an officer could purchase realty in his own name, donate it to the company, and then carry it on the books of the company as an asset. This procedure was approved by the Insurance Commissioner, according to Mr. Mayes. The taxpayer testified that he did not receive any money at all from the real estate transactions, but that they were merely done for the purpose of showing an increase in the assets of the insurance company and were purely and solely paper transactions. He also testified that the mortgage on his house had been a gift to the insurance company and that one of the other pieces of property had been substituted for the mortgage on his home because the Insurance Commissioner of Oklahoma had disapproved of the carrying of this mortgage as an asset of the company.

A consideration of the Government's proof alone and without explanation would sustain the counterclaim against the taxpayers; however, if there was no actual gain made, the counterclaim must fail. The taxpayers report on the calendar year and there was no evidence that tax returns were filed on an accrual basis, therefore, the taxpayers must receive the gain within the year for which they are charged with receiving it before they are liable for a tax on such gain. The taxpayers' testimony was all to the effect that no short term capital gains were actually realized and the court is inclined to believe this testimony. It would seem that the taxpayers explanation is consistent with other facts in that if the insurance company were solvent enough to purchase the realty involved, it would have been solvent without such purchases.

On cross examination by the government attorney, the taxpayer testified that if he were voted out of the office of presidency of the insurance company he would have no possible way of recovering his donations to that company since they were gifts from him. Such a statement may infer that

should the taxpayer remain in office he may some day recover his donations. However, the legal niceties which may be involved in later transactions in his relation with the insurance company as president are not before this court for determination. The taxpayer surely must realize that should a gain be made from the real estate "gifts" that he would be subject to tax at a later date and perhaps a penalty as well.

In the opinion of the court and in light of all of the evidence, the Government did not sustain the burden of proving its counterclaim. Since the taxpayer did not receive any gain from the property transfers for the years 1945 and 1946, he had no short term gain to report on his gross income and judgment shall be rendered for the taxpayers on the counterclaim.

Counsel are directed to submit a journal entry in conformity with this opinion within ten days from this date.