RUSSELL A. BUFALINO and CAROLYN BUFALINO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bufalino v. Commissioner
Docket No. 6174-73.
United States Tax Court
T.C. Memo 1976-110; 1976 Tax Ct. Memo LEXIS 294; 35 T.C.M. (CCH) 494; T.C.M. (RIA) 760110; April 7, 1976, Filed *294 1. Payments made to a partnership for services rendered primarily by one partner are includable in the income of the partnership rather than directly in the income of the partner. 2. Adjustments to partnership income redetermined. 3. Unreported taxable income of petitioners determined by application of funds method, plus estimated living expenses, redetermined. 4. Petitioners are liable for additions to tax for negligence under section 6653(a), I.R.C. 1954. Santo A. Agati, for the petitioners. Alan E. Cobb, for the respondent. DRENNEN
DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for the years and in the amounts as follows: Taxable Year
Addition to Tax Ended Dec. 31,
Deficiency
under Sec. 6653(a) [1]
1969
$12,465.82
$623.29
1970
5,570.62
278.53
In view of concessions made by petitioners as to a disallowed legal expense deduction, increased interest income, and certain adjustments *295 in the computation of partnership income, the following issues remain for decision: (1) Whether the amounts of $10,400 and $10,950 paid to the ABS Contracting Company, a partnership, in 1969 and 1970, respectively, constitute income to the partnership or income to petitioner Russell A. Bufalino in his individual capacity; (2) whether, in order to compute petitioner Russell A. Bufalino's distributive share of partnership income in 1969 and partnership loss in 1970, the ABS Contracting Company is entitled to deductions for automobile, insurance, telephone, and hotel expenses claimed in each of the years in issue; (3) whether petitioners had unreported taxable income of $23,811.30 in 1969 and $13,780.13 in 1970 as determined by respondent; and (4) whether petitioners are liable for additions to tax for negligence asserted by respondent pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are accordingly so found. Petitioners Russell A. and Carolyn Bufalino are husband and wife who, at all times pertinent to this case, resided in Kingston, Pa. Petitioners filed their joint individual income tax returns for the taxable years 1969 and 1970 with the *296 office of Internal Revenue in Philadelphia, Pa. Russell A. Bufalino (hereinafter referred to as petitioner) has for many years engaged in business relating to facets of the garment industry. In January 1967, petitioner and his cousin Angelo Bufalino formed a partnership known as the ABS Contracting Company[2] the office of which was located in Pittston, Pa. ABS engaged primarily in the dress cutting business; jobbers supplied ABS with dress material which ABS cut and shipped to sewing shops where the cut material was sewn into finished dresses and returned to the respective jobber to sell. The jobbers and sewing shops with which ABS did business were, for the most part, located in the northeastern Pennsylvania area; some of the jobbers, Sol Finger, Jack Leiberman, and Louis Stromberg, for example, also had offices in New York City. Although there was no formal, written partnership *297 agreement, petitioner and Angelo were 50-percent partners, sharing equally both partnership profits and losses. Angelo was responsible for the operational aspects of the business; he conducted the actual cutting operations of ABS, managed a dress shop which ABS operated in Mount Cobb, Pa., and also maintained and collected rents from various ABS rental properties. In addition, Angelo did the bookkeeping for ABS. Petitioner, for his part, was primarily responsible for procuring cutting contracts for ABS and maintaining contacts with jobbers. Toward this end, petitioner spent 3 or 4 days each week in New York City where he sought out various jobbers in order to obtain cutting work for ABS. Ordinarily, petitioner would drive to New York on Monday and remain until Wednesday or Thursday morning. On each trip, petitioner drove an automobile owned by ABS. When in New York, petitioner lived in an apartment in a hotel which, during 1969 and 1970, he shared with two other individuals who were in the cutting and/or sewing business and, like petitioner, came to New York to obtain work. The apartment was rented on a yearly basis and expenses therefor were shared equally. Petitioner paid the telephone *298 charges which amounted to approximately $23 per month during 1969 and 1970. In addition to visiting jobbers, virtually every Monday afternoon that petitioner was in New York petitioner met with Max Stein, a long-standing friend and business associate. [3] Stein was treasurer and part-owner of Fairfrox, Inc. (hereinafter, Fairfrox), a dress-manufacturing business, and was responsible for production and design. From its inception (in the latter half of the 1950's), Fairfrox engaged petitioner to locate cutting and sewing shops to which Fairfrox could send its dress material to be made into dresses. Petitioner was also involved in quality control of the production of various shops that made dresses for Fairfrox. One shop which petitioner found for Fairfrox was a business located in Forest City, Pa., which the Fairfrox interests then acquired and operated under the name of Helen Forest, Inc. Most of the work done in setting up the facility to accommodate Fairfrox's needs was performed by Angelo. Thereafter and during the years in issue, Angelo regularly traveled to Forest City to repair and maintain the equipment of Helen Forest, Inc. Angelo continued to service Helen Forest Inc., until *299 late 1971 or early 1972 when Helen Forest Inc., ceased operations. Fairfrox made regular payments to petitioner for his services since its inception. Initially, the payments made by Fairfrox, Inc., for petitioner's services were $175 per week; sometime prior to 1967, this amount was increased to $200 per week. The amount of the payments was determined by Max Stein and was based to some extent on what Stein would have had to pay someone else from New York to perform petitioner's function in the field for Fairfrox. Prior to formation of the ABS partnership these payments were made to petitioner; thereafter they were made to ABS at petitioner's direction. During 1969 and 1970, Fairfrox made weekly payments totaling $10,400 and $10,950, respectively, in the form of checks payable to ABS. No amounts were withheld by Fairfrox, Inc., for State or Federal taxes. The checks were received and deposited in a bank account by Angelo. The ABS partnership did not perform any cutting services for Fairfrox. ABS engaged in business until *300 early in 1972 when, having experienced difficulty in obtaining cutting work, petitioner and Angelo ended their partnership relationship. Thereafter, Angelo retained and operated the Mount Cobb plant; petitioner became an employee of Fairfrox. The $200-weekly checks which Fairfrox had been issuing to ABS were then paid to petitioner. On their joint income tax return for 1969 petitioners reported partnership income of $4,511.73 from ABS Contracting Company. On their 1970 return, petitioners reported a partnership loss in the amount of $611.09. In the statutory notice of deficiency issued to petitioners on May 11, 1973, respondent reduced petitioner Russell A. Bufalino's distributable share of partnership income for 1969 from $4,511.73 to $3,459.96 and reduced petitioner's share of partnership loss for 1970 from $611.09 to $558.66. Respondent's determination as to the respective shares of partnership income and loss was based on the following adjustments to partnership income: 1969
1970
Partnership income (or loss)
shown on return [4]
$ 9,023.46
($ 1,222.19)
Adjustments to income
(a) Gross receipts
(10,400.00)
(10,950.00)
(b) Depreciation
4,767.00
3,521.72
(c) Telephone
1,020.81
1,182.59
(d) Truck & auto expense
913.64
317.11
(e) Gas and water
113.08
113.08
(f) Heat
205.93
321.27
(g) Hotel expense
857.00
2,311.85
(h) Insurance
419.00
198.00
(i) Electric
410.96
(j) Repairs
1,871.29
(k) Advertising
200.00
(l) Business Promotion
200.00
(m) Entertainment
407.00
Total Adjustments
(2,103.54)
104.87
Partnership income or
(loss) corrected
6,919.92
(1,117.32)
Petitioner's distributable
share (50%) redetermined
$3,459.96
($558.66)
*301 Petitioners have conceded adjustments (b), (e), (f), and (i) through (m). [5]
The adjustments as to gross receipts in (a), supra, reflect respondent's determination that the amounts of $10,400 and $10,950, representing the total of weekly checks from Fairfrox to ABS in 1969 and 1970, respectively, constituted income earned by petitioner which was improperly reported as partnership income by ABS. Accordingly, respondent determined that the full $10,400 was reportable by petitioners in 1969, as was $10,950 for 1970. Respondent also determined that petitioners had unreported taxable income of $23,811.30 in 1969 and $13,780.13 in 1970. Respondent computed these figures by reference to petitioners' bank deposits and cash payments, *302 plus personal and other nondeductible expenditures. The parties have stipulated that during the years 1969 and 1970, petitioners made the following payments: Application of Funds
1969
1970
Deposits
Checking Account - The First
National Bank of Wyoming -
No. 02-01854
$ 78.00
$ 100.00
Savings Account - The First
National Bank of Wyoming -
No. 23756
1,976.84
350.13
Checking Account - Wyoming
National Bank of Wilkes-
Barre, Pa. - No. 555-277-1
4,944.80
1,600.00
Living Expenses - New York City
2,880.00
2,880.00
Purchase of autos by cash
5,076.00
Legal expense
6,118.90
Total
$21,074.54
$4,930.13
The parties have further stipulated that during the years 1969 and 1970, petitioners had the following sources of funds: Sources of Funds
1969
1970
ABS Contracting Company -
withdrawals
$ 950.00
$1,600.00
Ann Lee Frocks - salary
3,046.40
Interest income [6]
226.84
350.13
Accident Reimbursement
1,750.00
Sale of Auto
1,500.00
Checks to cash from
checking account [7]
500.00
Dividend income
90.00
Total
$8,063.24
$1,950.13
*303 In computing the amounts of unreported income for 1969 and 1970 ($23,811.30 and $13,780.13), respondent determined that petitioners had additional living expenses, other than living expenses in New York City, of $10,800 for each of the years 1969 and 1970. Respondent apparently derived this figure from the Application for Disaster Loan which petitioner Carolyn Bufalino, with the assistance of an attorney, filed with the Small Business Administration on September 19, 1972; in the space provided for "Monthly Income from all sources" is the statement, "Applicant receives $900.00 per month from husband for living expenses." During 1969 and 1970, petitioners' household expenses were paid for by petitioner Carolyn Bufalino with funds [8] provided by petitioner Russell A. Bufalino. Such expenses included food, utilities, and telephone. Petitioners did most of their dining and entertaining in their home. They employed no household servants and no other individuals lived with them during 1969 and 1970. Two or three times a year petitioners went to see relatives in Buffalo but otherwise incurred no traveling expenses, exclusive of Russell's weekly trips to New York. *304 Petitioners' home was destroyed in a flood in 1972 and their books and records were lost or destroyed in that flood. OPINION Our determination as to petitioners' income tax liability for 1969 and 1970 entails primarily an examination of the business activities conducted by petitioner Russell A. Bufalino. Specifically in this context we must decide: (1) Whether the amounts of $10,400 and $10,950 paid by Fairfrox, Inc., to ABS Contracting Company in 1969 and 1970, respectively, constitute income of the ABS partnership and therefore should be included in the computation of petitioner's distributive share of partnership income or loss or whether these amounts are instead income earned by petitioner in his individual capacity and, as such, reportable wholly by him; (2) Whether, in computing petitioner's distributive share of partnership income as reported for 1969 and partnership loss reported in 1970, ABS is entitled to deduct automobile, insurance, telephone, and hotel expenses claimed in each of the years 1969 and 1970; and (3) Whether petitioners had unreported taxable income of $23,811.30 in 1969 and $13,780 in 1970 as determined by respondent. Additionally, we must decide *305 whether petitioners are liable for the additions to tax for negligence asserted by respondent pursuant to section 6653(a). As to the first issue, respondent determined that the weekly payments from Fairfrox, Inc., to ABS Contracting Company constituted petitioner Russell A. Bufalino's individual income rather than partnership income; accordingly, respondent excluded these amounts from the computation of petitioner's distributive share of partnership income or loss for 1969 and 1970 and instead included the payments in petitioner's income for 1969 and 1970 to the full extent of $10,400 and $10,950, respectively. In essence, respondent's position is that the income in issue was earned by petitioner in his individual capacity from activities outside the scope of the partnership business such that petitioner cannot shift the tax burden thereof by assignment to ABS. [9] Petitioners contend that no such assignment occurred because the payments were partnership income, although derived from services in fact performed by petitioner Russell A. Bufalino. *306 Resolution of the issue focuses on whether the payments from Fairfrox related to activities within the ambit of the partnership business. Receipts derived from activities or transactions incident to the conduct of the business of the partnership constitute income to the partnership, not the individual member. See Starr v. Commissioner,267 F. 2d 148 (7th Cir. 1959), affirming on this issue a Memorandum Opinion of this Court; Gardner Abbott,30 B.T.A. 227 (1934). Conversely, income produced by services not germane to the conduct of the partnership business is reportable solely by the individual taxpayer. Villere v. Commissioner,133 F. 2d 905 (5th Cir. 1943), affirming a B.T.A. Memorandum Opinion; W. B. Mayes, Jr.,21 T.C. 286 (1953); Mayes v. United States,207 F. 2d 326 (10th Cir. 1953), affirming per curiam 106 F. Supp. 961 (E.D. Okla. 1952). We find that petitioner's activities for Fairfrox satisfy this "business nexus" test because, in short, the business of ABS included the arrangement *307 with Fairfrox. At the inception of the partnership, petitioner's business arrangement with Fairfrox was contributed to ABS and thereafter included in the composite of activities which comprised the business of ABS. We believe that respondent has too narrowly restricted the scope of the ABS enterprise to its cutting activities. Although ABS may have engaged primarily in the cutting business, it did not exclusively so confine itself. As indicated in our findings, supra,ABS owned and operated a dress factory at Mount Cobb, Pa., and also had interests in rental properties. It also provided regular repair and maintenance service to Helen Forest, Inc., as a result of the arrangement with Fairfrox. Angelo performed most of the services to Helen Forest, Inc. Thus, we adopt a broader view of the character of the ABS enterprise than that upon which respondent predicates his position. [10]
*308 The fact that throughout the existence of the ABS partnership the weekly checks from Fairfrox were issued to ABS and received and deposited by Angelo as bookkeeper supports our conclusion that the payments in 1969 and 1970 were partnership income rather than income produced by petitioner on his own behalf. That petitioner actually performed most of the services for Fairfrox does not in any way derogate from the characterization of the income engendered therefrom as ABS income; service operations, by definition, require an individual's performance, and the fact that it was petitioner who undertook the direct services to Fairfrox merely reflects the division of responsibilities by which petitioner and Angelo agreed to operate ABS. Having found these services to be within the scope of the business conducted by ABS, we conclude that the weekly payments received from Fairfrox in respect thereof constitute partnership income and as such, were properly included in the computation of petitioner's distributive share of income or loss for the years in issue, and were not includable directly in petitioners' income. Ultimate determination of petitioner's distributive share of partnership income *309 or loss for 1969 and 1970 depends, however, on our decision as to whether ABS is entitled to the deductions for automobile, insurance, hotel, and telephone expenses claimed in each of the years 1969 and 1970. [11]
*310 While we recognize that the mere fact ABS did, in general, do business with some of the individuals whom petitioner saw in New York City does not of itself establish the business purpose of petitioner's trips to New York and expenses incident thereto, cf. John L. Ashby,50 T.C. 409, 415-416 (1968), we do believe that petitioner traveled to New York in the pursuit of the business of ABS. Both our determination that the business of ABS included petitioner's activities in respect of Fairfrox as well as the cutting operation managed by Angelo, and the fact that petitioner was the partner responsible for obtaining work for ABS establish the requisite business relationship. We note at the outset that petitioners' books and records were destroyed or lost in a flood which occurred in 1972. (There is an intimation in the record that ABS's books and records were destroyed or discarded too; at least, they were not offered into evidence.) As a result, petitioners rely on testimony presented at trial in order to corroborate the expenses claimed. Since we have found that petitioner did make trips to New York in 1969 and 1970 in an automobile owned by ABS, and for purposes *311 related to ABS business, we believe ABS is entitled to a deduction for the expenses of these trips. However, since we have no evidence concerning how much of the expenses disallowed for truck and auto were expended on these trips, we have applied the rule of Cohan v. Commissioner,39 F. 2d 540 (C.A. 2, 1930) to conclude that ABS is entitled to deduct as auto and truck expenses $350 in 1969 and $200 in 1970, respectively. (These amounts are considerably less than the cost of traveling by automobile between Pittston, Pa., and New York twice a week, as computed by reference to the optional mileage allowances prescribed in Rev. Proc. 66-10, 1966-1 C.B. 622 for 1969 and Rev. Proc. 70-25, 1970-2 C.B. 506, for 1970 but under the Cohan rule we must lean heavily "upon the taxpayer whose inexactitude is of his own making.") As to the expenses claimed for insurance, the record is devoid of any evidence whatever in regard thereto; we therefore uphold respondent's adjustment disallowing the entire amounts claimed for insurance. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
With *312 regard to petitioner's hotel expenses for the rental of the apartment which he shared with two other individuals, petitioners presented no evidence as to actual costs for 1969 and 1970. Instead, we have only petitioner Russell A. Bufalino's general testimony as to his share of the rental expenses "in the beginning." Since we have found that petitioner did in fact maintain the hotel apartment, we invoke the rule in Cohan v. Commissioner,supra, to allow ABS deductions for hotel expenses in the amounts of $428.50 for 1969 and $1,155.92 for 1970. [12]
*313 On the question of the deduction claimed by ABS for expenses of the telephone service in the hotel apartment, petitioners offered no evidence as to actual costs other than petitioner Russell A. Bufalino's testimony estimating that charges did not exceed $23 per month. Since there is evidence that petitioner did use the telephone in New York on ABS business and since this amount is reasonable and considerably less than the amounts disallowed by respondent, we conclude that ABS is entitled to deduct $276 of the telephone expenses in both 1969 and 1970. The third major issue requires our determination as to whether petitioners had unreported income in the amount of $23,811.30 in 1969 and $13,780.13 in 1970. Respondent arrived at these respective figures by reference to the source and application of funds method for reconstruction of income. Petitioners have not challenged the propriety of respondent's reliance on this method; in the absence of adequate books and records of petitioners, respondent has broad discretion to elect and employ a method enabling him to reconstruct their income. *314 Traum v. Commissioner,237 F. 2d 277, 280 (7th Cir. 1956), affirming a Memorandum Opinion of this Court; Estate of Mary Mason,64 T.C. 651, 656 (1975); Eugene Vassallo,23 T.C. 656, 662 (1955). As specified in our findings, supra, the parties have stipulated that petitioners made total payments of $21,074.54 in 1969 and $4,930.13 in 1970 and that petitioners' sources of funds totaled $8,063.24 in 1969 and $1,950.13 in 1970. Thus narrowed, [13] the controversy as to this issue centers on petitioners' contentions that they had an additional, nontaxable source of funds in 1969 in the form of a $10,000 loan and that respondent's determination that petitioners had additional living expenses of $10,800 in each of 1969 and 1970 is arbitrary and excessive. In respect of the former, petitioners attempt to establish that, in addition to the $8,063.24 in funds for 1969 to which they *315 have agreed, petitioners received a $10,000 loan from Edward Sciandra, a relative of petitioner Carolyn Bufalino. While Sciandra may have been a possible source to whom petitioners could resort for funds, we are not persuaded that petitioners did in fact receive the alleged $10,000 loan. The testimony by both Sciandra and petitioner Russell A. Bufalino as to the circumstances of the alleged loan was vague and unconvincing; on such evidence, we cannot find that petitioners had an additional $10,000 of nontaxable income in 1969. We do believe, however, that petitioners are correct in their challenge of the reasonableness of respondent's determination of the $10,800 in living expenses for 1969 and 1970. Respondent apparently arrived at this figure solely on the basis of the information contained in the Application for Disaster Loan which indicated "Applicant [Carolyn Bufalino] receives $900.00 per month from husband for living expenses." We believe this figure was intended to reflect petitioners' total monthly income of $225 per week from Fairfrox in 1972 rather than some portion thereof applied only for living expenses. Petitioners point out that the application relates to the year *316 1972 and is therefore of no weight as to living expenses for 1969 and 1970. While we agree that the 1972 figures are, at best, inconclusive as to the years in issue, respondent's reliance on the application figure suffers from a more serious defect in that the facts evincing petitioners' life style and standard of living in 1969 and 1970 simply do not support a finding of living expenses in the amount determined by respondent. On the basis of petitioners' testimony, particularly that of petitioner Carolyn Bufalino, that their personal living expenditures more nearly approximated $3,000 in each of the years in issue and our findings as to the modest standard of living enjoyed by petitioners, we reject respondent's determination as unwarranted and unreasonable. [14]
In addition to the fact that respondent's determination was based on evidence that was flimsy at best, respondent also charged as additional income to petitioners in both 1969 and 1970 $2,880 as "living Expenses - New York City." We have no way of knowing whether this duplicates in part the hotel expenses in New York ostensibly paid by ABS. In any event, *317 Russell Bufalino spent about half of his time in New York, which should reduce petitioners' living expenses in Pittston. We note, too, that petitioners are charged with $4,944 and $1,600 of deposits in their checking account at the Wyoming National Bank of Wilkes-Barre, Pa., for 1969 and 1970, respectively, and are given credit for only $500 of withdrawals from this account in 1969 for checks drawn to cash. The transcript of withdrawals from this account during the year 1969 does reflect withdrawals of only $500 to cash, but it reflects total withdrawals of $3,583.25 in checks payable to the telephone company, insurance companies, and others that would normally be included in estimated living expenses. And, of course, we have no transcript of the withdrawals from that account in 1970. We conclude that a more reasonable estimate of petitioners' living expenses is $4,800 for both 1969 and 1970. Cohan v. Commissioner,supra. Applying this figure to the reconstruction of petitioners' income as outlined above, we find that petitioners had unreported taxable income of $17,803.78 in 1969 and $7,771.36 in 1970.[15]
*318 Lastly, we must consider the imposition of the penalties for negligence asserted by respondent pursuant to section 6653(a). [16] Petitioners have the burden of proof on this issue, Peter Vaira,52 T.C. 986 (1969), affd. on this issue 444 F. 2d 770 (3d Cir. 1971); Mark Bixby,58 T.C. 757 (1972), but failed to adduce any evidence to account for the amounts of unreported income which we have determined in the reconstruction of their income. Accordingly, petitioners are liable for additions to tax under section 6653(a) for each of the years 1969 and 1970.
*319 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.↩
2. Prior to the formation of the partnership, Angelo had been a salaried employee of ABS Contracting Company which was presumably a sole proprietorship operated by petitioner, although the record is not clear as to either the form in which the ABS business was conducted or petitioner's relation thereto.↩
3. Prior to the formation of Fairfrox, Inc., Stein and petitioner, among others, had been engaged in what proved to be an unsuccessful dress shop business.↩
4. These figures are as stipulated by the parties; the actual partnership returns were not introduced in evidence.↩
5. Petitioners also concede the disallowance of a miscellaneous deduction of $6,118.90 claimed for legal expenses for the year 1969, as well as adjustments by respondent increasing their income for the years 1969 and 1970 for interest income of $7.52 and $8.64, respectively, received from the West Side Bank, West Pittston, Pa.↩
6. These figures do not seem to include the additional interest income in the amounts of $7.52 and $8.64 which petitioners conceded they received in 1969 and 1970, respectively (see footnote 5, supra↩). 7. This item apparently refers to the joint checking account opened at the Wyoming National Bank of Wilkes-Barre, Pa., on Jan. 24, 1969, as reflected on a transcript of withdrawals from this account offered in evidence. The total amounts are stipulated but since no transcript of the 1970 withdrawals were offered in evidence, we cannot ascertain whether any of the 1970 withdrawals were of cash.↩
8. Carolyn Bufalino testified that she also resorted to "my own little reserve" to supplement the amounts received from her husband in 1969 and 1970.↩
9. At issue are the payments to ABS, not the validity of the partnership organization itself. Cf. Jerome J. Roubik,53 T.C. 365, 378-79 (1969); Commissioner v. Laughton,113 F. 2d 103 (9th Cir. 1940), remanding 40 B.T.A. 101↩ (1939).
10. Not only do we regard petitioner's activities in respect of Fairfrox as a constituent element of the ABS business but note that these activities do also relate to the cutting business of ABS; to the extent ABS only cut the material supplied by jobbers and thus depended on sewing shops to which the material could then be sent, ABS' cutting business could benefit from the contacts developed and maintained by petitioner in accommodating the similar production needs of Fairfrox (and vice versa).↩
11. Specifically, the amounts in issue are as follows: Item
1969
1970
Truck & auto expense
$ 913.64
$ 317.11
Insurance
419.00
198.00
Hotel expense
857.00
2,311.85
Telephone
1,020.81
1,182.59
$3,210.45
$4,009.55
These amounts are stipulated to be among the adjustments made by respondent "to petitioner's partnership income and loss reported on his income tax returns." The notice of deficiency issued to petitioners does not contain a breakdown of the adjustments made in the partnership income; it simply reflects the net adjustments "in accordance with Revenue Agent's report on this partnership." Neither the Revenue Agent's report on the partnership nor the partnership returns were offered in evidence. As a result, we cannot ascertain whether the above expenses disallowed to the partnership constituted all of the truck and auto, insurance, hotel, and telephone expenses claimed by the partnership as business expense or only those related to Bufalino's trips to New York. In fact, we are rather frustrated in our efforts to determine with reasonable accuracy the correct taxable income of petitioners herein because of the gaps in the evidence. Petitioners, who had the burden of proof and should have had the information needed to fill the gaps, did not do so. On the other hand respondent, who used as witnesses two revenue agents involved in the investigation of Bufalino's activities and the audit of the returns, made no explanation of how the deficiency was determined and what steps were taken, if any, to avoid duplication of income charged to petitioners in the hybrid method of determining income used by respondent. We were left with the impression that respondent was more interested in examining Bufalino and his witnesses with reference to who they were involved with in the garment industry than in helping the Court determine petitioners' correct tax liability. Russell Bufalino was indicted on a conspiracy charge in 1972 or 1973 and, upon trial, was found not guilty. Under the circumstances we must assume that the expenses in issue were related to Bufalino's trips to New York. At a pre-trial conference the question of substantiating these relatively small amounts was discussed with counsel. Since counsel could not agree on the amount of the expenses related to Bufalino's trips to New York, and proof of each item of expense would have involved an inordinate amount of time, the Court suggested, and counsel agreed, that trial of this issue would be limited to evidence of whether the expenses claimed and disallowed were related generally to business of ABS or to Bufalino personally. We have approached the issue on that basis.↩
12. We are not unmindful of the fact that the parties have stipulated, as indicated in our findings, supra, that petitioners made payments for "Living Expenses - New York City" in the amount of $2,880 in each of the years 1969 and 1970. However, given the paucity of evidence as to petitioner's actual hotel expenses and in the absence of the ABS partnership returns which might enable us to compare the total hotel deductions claimed with the adjustments thereto determined by respondent, we will not indulge in speculation for the benefit of either petitioners or respondent and accordingly reach the above result by application of the Cohan↩ principle.
13. While we have our doubts as to the reliability and completeness of the stipulations of sources and expenditures, particularly in view of seeming inconsistencies and possible duplications, we address ourselves to the issue as framed by the parties.↩
14. See George D. Zakas,T.C. Memo. 1973-47↩.
15. These amounts were computed as follows: ↩
1969
1970
Stipulated payments (application of funds)
$21,074.54
$4,930.13
Living expenses redetermined
4,800.00
4,800.00
Total payments
$25,874.54
$9,730.13
Total known sources of funds
(Stipulated amounts plus conceded
unreported interest income)
(8,070.76)
(1,958.77)
Unreported income
$17,803.78
$7,771.36
16. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩