Jack STARR, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Samuel M. STARR, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 12550, 12551.

United States Court of Appeals
Seventh Circuit.

May 20, 1959.

Isaac I. Bender, Chicago, Ill., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Joseph F. Goetten, Lee A. Jackson, A. F. Prescott, Arthur I. Gould, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and HASTINGS and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Jack and Samuel M. Starr have each appealed from decisions of the Tax Court of the United States involving deficiencies in income tax for 1943 and 1944. Their two cases were consolidated for trial.

Four issues are involved.

### I.

■ The two taxpayers and their brother Joseph were partners in the Starr Pen Company, which engaged in the wholesale selling of fountain pens and fountain pen and pencil sets. Joseph Starr, who had a 70% interest in the partnership, ran the business and was in charge of sales.

In 1943 fountain pens were in short supply. Joseph made sales at an invoice price to be paid by check to the partnership plus an additional "royalty" or side payment, payable in cash to Joseph. These additional cash amounts totalling in excess of $235,000, were, at various times, paid directly to Joseph, with the exception of $12,000 given to Samuel at his law office, in sealed envelopes, with instructions for delivery to Joseph. The total amount paid, by check and by cash, was entered on the customer's books as the purchase cost of the merchandise.

The taxpayers contend that these cash "royalties" in excess of the invoice charges were income only to Joseph individually and not to the partnership on the theory that he was acting on his own behalf and not for the partnership.

It is undisputed that Joseph was authorized to sell the partnership merchandise and in fact did sell partnership merchandise for the total amounts received in checks payable to the partnership and in cash payable to Joseph.

Sec. 182(c), 1939 Internal Revenue Code, 26 U.S.C.A. § 182(c), allocates to the partners their distributive share of the net income of the partnership, whether or not distributed to them and whether they were or were not aware of such net income. Stoumen v. Commissioner of Internal Revenue, 3 Cir., 1953, 208 F.2d 903, 906.

### II.

■ The Commissioner determined that Jack received a salary from the partnership and that his proportionate share of the distributive partnership net income was to be determined after salaries had been allocated to each of the respective partners receiving salaries.

Prior to becoming a partner, Jack had been employed at an annual salary of $14,382.18. In his return for the calendar year 1943, he included $3,129.71, as salary received prior to his becoming a partner on February 1, 1943. He testified that as a partner, he received no salary, merely his proportionate share, 15%, of the partnership net income.

Samuel was also entitled to 15% of the partnership net income. However, the partnership income tax returns show that Jack received a larger amount from the partnership than Samuel, i. e. $3,000 in 1943, $4,600 in 1944, and $2,400 in 1945.

The Commissioner concluded that the only logical explanation for the difference was that Jack was receiving a salary. The taxpayers argue that the "salary" would be unduly small compared to the $14,382.18 paid Jack as an employee. However, although Jack and the accountant, who prepared the returns for him and for the partnership, both testified, neither offered any other explanation for the discrepancy. It appears to us that the inference of fact drawn by the Commissioner is reasonable and substantially supported by the evidence. Wichita Terminal Elevator Co. v. Commissioner of Internal Revenue, 10 Cir., 1947, 162 F.2d 513, 515.

### III.

■ Jack Starr took a deduction for a loss of $18,390 and Samuel for a loss of $30,500 in 1945. These sums had been advanced without interest to Four Starr Manufacturing Company, a partnership composed of taxpayers' brother William, his wife, and a Mr. and Mrs. William Friedman, who were not related to the Starrs, each having a 25% interest. The taxpayers testified that they did not wish at that time to assume the liabilities of partners in Four Starr Manufacturing Company. Their agreement provided that at the end of three years, the taxpayers would each receive one-sixth of the profits of the Four Starr Manufacturing Company, which had the option of continuing the agreement for another

three years on the same terms, or of repaying the sums advanced.

Prior to the expiration of the first 3-year period, the plant, books and records of Four Starr Manufacturing Company were destroyed by fire. The taxpayers did not share in the distribution to creditors. No part of the funds advanced by the taxpayers was ever repaid.

Taxpayers contended that these losses were deductible in full under Sec. 23(e), Internal Revenue Code of 1939, 26 U.S. C.A. § 23(e):

"In computing net income there shall be allowed as deductions: * * (e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) If incurred in trade or business; or

"(2) If incurred in any transaction entered into for profit, though not connected with the trade or business; or

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft * * *."

or Sec. 23(k) (1):

"(1) General Rule. Debts which become worthless within the taxable year; * * * This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *."

The Commissioner construed the arrangement with Four Starr Manufacturing Company as creating a mere debtor-creditor relationship by a non-interest bearing loan to relatives who had the option of postponing repayment by granting an interest in the Company, and concluded that the transaction fell within the scope of Sec. 23(k) (4):

"(4) Non-business debts. In the case of a taxpayer, other than a cor-

poration, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt * * * other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

Only two of the four partners of Four Starr Manufacturing Company were related to taxpayers. True the advances were to be repaid (without interest) in three or six years. However, in any event, each of the taxpayers was to receive a partner's share, or one-sixth of the profits of the Company at the end of the first 3-year period at least.

The Commissioner argues that Samuel was a practicing attorney and Jack the superintendent in charge of assembly and shipping of Starr Pen Company, of which both were partners; that neither was in the business of making loans.

The sums advanced were not incurred in taxpayers' trade or business. The transaction, however, was entered into for profit, and a profit-sharing arrangement was clearly made, within the scope of Sec. 23(e) (2).

### IV.

The taxpayers assign as error the method of computing credit for payments made. There is no dispute as to the arithmetical computation.

Jack paid $19,547.16 on his 1944 declaration of estimated tax. When he filed his 1944 income tax return, he showed this sum as an overpayment and elected to have it credited to his 1945 estimated tax, which was done. The election made was binding on the Commissioner and the sum had to be so credited. The election was also binding on the taxpayer except that it could have been changed on or before the last day prescribed for the filing of that tax return and declaration of estimated tax for the suc-

ceeding taxable year. Rev.Rul. 55–448, Cum.Bull.1955–2, pages 595, 596. Permitting subsequent changes in election would be inconsistent with orderly administration.

Each of the taxpayers paid $25,000 which was placed in the "District Director's 9–D Suspense Account," final audit not yet having been completed and no other allocation feasible. These sums were deducted from the amount of the deficiencies in determining the balances due and unpaid. The taxpayers argue that the deficiencies themselves should have been found to be $25,000 smaller in amount, rather than at the total figure, partially satisfied to the extent of $25,-000. The taxpayers are concerned about interest calculated on the total amount of the deficiencies. However, the government does not contend that interest will be due on that portion of the deficiencies. Sec. 292(a), 1939 Code, 26 U.S.C.A. § 292(a), provides for adjustment in interest where portions of a deficiency are not to be collected by reason of prior satisfaction.

It is the decision of this Court that:

The Tax Court correctly held that the cash "royalty" payments in excess of the invoice charges were partnership income of the Starr Pen Company, and, accordingly, includable in the taxable income of Samuel M. and Jack Starr to the extent of their proportionate shares in the Starr Pen Company.

The Tax Court did not err in holding the Commissioner's determination correct that Jack Starr received a salary from Starr Pen Company and that his proportionate share of the distributive partnership net income was to be determined subsequent to allocation of salaries.

The investments made by the taxpayers in Four Starr Manufacturing Company were deductible in full as losses under Sec. 23(e) of the 1939 Code.

There is no substance to the taxpayers' argument that the Tax Court did not make the proper credits in the com-

putations for entry of the Tax Court's decision.

The Tax Court's decision is affirmed on issues 1, 2, and 4; as to issue 3 we reverse and remand the cause for further proceedings consistent with the opinion hereinabove expressed.