MELVIN L. and SHERRY GOLD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gold v. Commissioner
Docket No. 287-80.
United States Tax Court
T.C. Memo 1983-711; 1983 Tax Ct. Memo LEXIS 83; 47 T.C.M. (CCH) 458; T.C.M. (RIA) 83711; November 29, 1983. Irving Tobin, for the petitioners. Susan G. Lewis, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years 1968 and 1969 in the respective amounts of $2,681.94 and $621.50. After concessions, the sole issue presented for our decision is whether, under the circumstances of this case, petitioners were required to recognize *84 additional income in each year because of upward adjustments to the taxable income, for fiscal years ending June 30, 1968 and June 30, 1969, of a partnership in which petitioner Melvin L. Gold was a limited partner. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. The petitioners, Melvin L. Gold (hereinafter "petitioner") and Sherry Gold, husband and wife, resided in West Orange, New Jersey at the time they filed their petition herein. They filed joint Federal income tax returns, on the calendar year and cash basis, for the taxable years 1968 and 1969. During the above years, petitioner was a limited partner in the stock brokerage firm of Hertz, Warner & Co. (hereinafter "the partnership"), having a six percent share of the profits of the partnership, in return for his contribution of $1,040,000 in securities or cash to the partnership. In their joint returns for 1968 and 1969, petitioners reported, as their distributive shares of the taxable income of this partnership, the respective amounts of $79,533 and $4,816. Said partnership apparently filed its returns on the basis of *85 a fiscal year ending June 30. Among the Articles of Limited Partnership, [1] to which petitioner was a party, the following provisions appear: TENTH: During the existence of the partnership, true and correct books of account shall be kept and such books shall, at all times, be accessible to any of the partners at all reasonable business hours and be open to the inspection of any legal representatives of any deceased partner or by any person by him thereto authorized. ELEVENTH: a. * * * b. it is further agreed that the majority of the Executive Committee shall have the final decision in reference to any dispute which may arise as to the policies of the business or as to the management thereof, and shall also have the right to terminate the partnership on 90 days notice to all partners and to add additional General or Limited Partners to the firm, as well as request the retirement of any General of [sic] Limited Partner on ninety days notice. c. the Executive Committee shall consist of the following General Partners: HERTZ, WARNER, SALUC and CARNEY. The numerical majority of the Executive Committee shall have all powers to direct the operations of this firm in accord *86 with the terms and provisions set forth in this Agreement. * * * FOURTEENTH: The firm shall pay such business expenses of the partners, and in such amounts, as shall be approved by the Executive Committee. In addition to such expenses it is recognized that the partners incur business expenses which, because of their character, are not susceptible to precise computation and accounting. This category includes some personal contact and entertainment expenses which are very important to the Partnership business and which are incurred by the partners at their homes, clubs, and other places of entertainment. Also included are miscellaneous business expenses such as telephone calls, taxis, tips, gifts, etc., which are intermingled with the partners' personal expenses. Instead of charging these expenses to the firm, with the resulting uncertainty as to items and amounts, the partners have agreed to bear such expenses out of their own funds. The distributive shares of firm income provided for in the Partnership Agreement have been established bearing in mind the fact that the business expenses described herein are to be paid for by the partners individually. *87 As the result of an audit of the partnership's information returns for its fiscal years 1968 and 1969, respondent increased the ordinary distributable net income of the partnership in the respective amounts of $120,852.25 and $104,566.06. This net adjustment resulted from a decrease by respondent in the allowable deductions claimed by the partnership for employees' meals, furniture and equipment rental, entertainment, travel gratuities and holiday expenses, partially offset by an increase in allowable depreciation. Said adjustments were agreed to by the partnership on November 17, 1972. As the result of the above agreed increases to the partnership's income, respondent determined that petitioner's reportable share should be increased by $3,894 for 1968 and $1,688 for 1969, and respondent's statutory notice of deficiency herein was issued accordingly. Neither at trial herein, nor on brief, have petitioners challenged the correctness of respondent's adjustments to the partnership's income. Indeed, petitioners disclaim knowledge as to the merits of that controversy. Petitioners challenge the correctness of respondent's determination herein, however, on the basis that it was *88 improper for respondent to allocate any portion of the additional partnership income to petitioner's limited partnership share because (a) the limited partnership agreement did not entitle petitioner to receive any portion of such additional income, as determined by respondent, and in fact petitioner did not receive any additional distributions of income as the result of respondent's determinations, and (b) even if petitioner was entitled to receive additional distributions of income from the partnership, resulting from respondent's increases in the partnership's income in each of the two years, it was too late for petitioner to recover any such additional sums from the partnership by the time he found out the adjustments which had been made at the partnership level, because of the applicable statute of limitations (not otherwise identified or described). We find petitioners' contentions to be without merit. Under the statutory scheme, a partnership is not taxable as such. Section 701, Internal Revenue Code of 1954. [2] Instead, the individual partners are taxed on their distributive shares of the partnership's taxable income, computed, with minor exceptions *89 not here relevant, in the same manner as in the case of an individual. Sections 702, 703. [3] The partners' distributive shares, in turn, are to be determined in accordance with the provisions of section 704. [4]
Consistent with the above statutory provisions, respondent's regulations provide *90 that Each partner is required to take into account separately in his return his distributive share, whether or not distributed, of each class or item of partnership income, gain, loss, deduction, or credit described in subparagraphs (1) through (9) of this paragraph. * * * [Section 1.702-1(a), Income Tax Regs.] On this record, it appears that this is exactly what happened here. Upon audit, respondent made certain adjustments to the income of the partnership, resulting in an additional amount of partnership income for the years 1968 and 1969, over that which the partnership had reported in its information returns. The partnership agreed to these adjustments, and petitioner has not contested herein their accuracy. Respondent thereupon allocated to petitioner his distributive share of such increased partnership income, and included it in petitioners' statutory notice. [5]
*91 Petitioners argue that they should not be chargeable with any portion of the additional income determined against the partnership by respondent, because in fact petitioner received no additional distribution from the partnership resulting from said adjustments, and was not aware of the adjustments to the partnership income by respondent at the time said adjustments were made. These alleged facts, even if true, are irrelevant. A partner is taxable on his distributive share of the partnership's income whether he receives it or not, or whether he is aware of its existence. Stoumen v. Commissioner,208 F.2d 903 (3rd Cir. 1953); Starr v. Commissioner,267 F.2d 148 (7th Cir. 1959); Section 1.702-1(a), Income Tax Regs.
Petitioners further argue that they should not be charged with the additional partnership income here in question because they had no right to receive any portion of such additional income - in other words, that the additional taxable income of the partnership, as determined by respondent and as agreed to by the partnership, did not enter into or form any part of the petitioner's distributive share under the partnership agreement. In *92 support of this proposition, petitioners argue that full discretion and authority in the conduct of the partnership affairs was vested in an executive committee of the general partners, that petitioner had no power as a limited partner, to control such actions, and that once the executive committee made a decision to pay certain expenses, such as those which were disallowed by respondent upon audit of the partnership's return, petitioners' distributive share was nevertheless fixed, and there was nothing he could do about it. We find this argument equally unconvincing. In the first place, it is the general rule, and certainly the rule in New York, that limited partners as such have no voice in management of a partnership. N.Y. Partnership Law, Sec. 99 (McKinney 1948); Hirsch v. du Pont,396 F. Supp. 1214 (S.D.N.Y. 1975). In the second place, petitioner, in executing the limited partnership agreement in effect herein, specifically agreed to the delegation of management authority to the executive committee composed of general partners. (See the quotation from the limited partnership agreement in our findings of fact, supra ). Finally, and *93 most important, it is not at all clear in this record that petitioners' distributive share under the partnership agreement would not be automatically increased by the amount of any additional partnership income which was determined. Such an adjustment would certainly appear to be normal and proper, and we find nothing in the partnership agreement introduced in evidence herein which reads to the contrary. In the conduct of the affairs of a partnership, there may be many occasions where funds are expended which are not deductible for tax purposes, e.g., capital expenditures, expenditures for items which are not allowable deductions, etc. Such expenditures may well reduce the funds which are available for distribution to the partners, but they do not affect the partners' distributive shares, as such are computed for income tax purposes. Each partner must report his ratable share of the taxable income of the partnership. When the taxable income of the partnership is adjusted, the results necessarily flow through to the partners in accordance with their distributive shares. Sections 702, 703, 704.If petitioner feels that the executive committee of the partnership made an improper *94 expenditure of partnership funds, in violation of the partnership agreement, that is a matter between him and the general partners, [6] but he has made no contention here that the adjustments which respondent made to the partnership income were improper from a Federal tax standpoint. We accordingly hold for respondent on this issue. All other issues in the case having been conceded *95 by the petitioners, Decision will be entered for the respondent.
Footnotes
1. Although the record is not crystal clear, the indications are that Hertz, Warner & Co. was organized under the limited partnership law of the State of New York.↩
2. All statutory references herein are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Rule of Practice and Procedure of the Tax Court, unless otherwise noted. ↩
3. In pertinent part, sec. 702 provides as follows: SEC. 702. INCOME AND CREDITS OF PARTNER. (a) General Rule.--In determining his income tax, each partner shall take into account separately his distributive share of the partnership's - * * * (9) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.↩
4. In pertinent part, sec. 704 provides as follows: SEC. 704. PARTNER'S DISTRIBUTIVE SHARE. (a) Effect of Partnership Agreement.--A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section be determined by the partnership agreement.↩
5. The parties herein have stipulated that petitioner was entitled to a six percent share the profits of the partnership. Respondent's statutory notice, however, allocated to petitioner less than that amount of the additional partnership taxable income. This apparent discrepancy is unexplained, but neither party has complained about it.↩
6. Petitioner complains that even if he did have a right to a distributive share of the increased partnership income, it was too late for him to do anything about it when he found out about respondent's adjustments to the partnership income, because of the applicable statute of limitations. We note that there is no showing in this record that the partnership books were not corrected to reflect petitioner's share of the increased income. Further, the partnership agreement (as noted in our findings) gave petitioner the right to inspect its books at all reasonable times. If he slept on his rights and allowed the partnership to short-change him with respect to his distributive share, it is he, and not respondent who must suffer the consequences. Such oversight cannot change the tax results herein.↩