T.C. Memo. 2000-188

UNITED STATES TAX COURT

EDWARD D. LANG AND SHARON A. LANG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7280-97.                    Filed June 27, 2000.

<u>Kevin Phillip Kennedy</u>, for petitioners.

<u>T. Richard Sealy III</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes in the amounts of $104,221 for
1989, $136,986 for 1990, $161,458 for 1991, $93,890 for 1992, and
$76,200 for 1993.  Respondent also determined that petitioners
are liable for the fraud penalty under section 6663 for each
year, but respondent now concedes they are not.  Respondent

determined in the alternative that petitioners are liable for the accuracy-related penalty for negligence under section 6662 for each year.

Petitioner[1] and Donald J. Trisch (Trisch) formed a partnership called Diversified Resources and Development (DRD) in the early 1980's to own rental property. After concessions, the issues for decision are:

1. Whether petitioner and Trisch continued to be partners in DRD during the years in issue (1989-93). We hold that they did.

2. Whether certain engineering income that Trisch earned during the years in issue was income of the DRD partnership. We hold that it was not. Thus, petitioners are not liable for tax on that income.

3. Whether certain income and losses from real estate rental property owned by DRD were partnership income and losses. We hold that they were.

4. Whether tax years 1992 and 1993 should be dismissed from this case. We hold that they should not.

5. Whether petitioners are liable for the accuracy-related penalty under section 6662 for each year. We hold that they are not.

---

[1] References to petitioner are to Edward D. Lang.

## I.  FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

### A.  Petitioners

Petitioners lived in San Antonio, Texas, when they filed the petition.  Petitioner graduated from high school and completed 2 years of college.  He then worked for several years as a steel fabrication draftsman.  He later worked for a machine shop and a container business.

### B.  Formation and Early Years of the Diversified Resources and Development Partnership

In the mid-1970's, petitioner met Trisch, a petrochemical furnaces consultant.  In the early 1980's, Trisch, petitioner, and Ronnie Pace (Pace) orally agreed to form the DRD partnership to hold and rent real estate.  DRD bought real property with mobile homes in Truth or Consequences, New Mexico, to rent to skiers during the winter.

DRD lent money to two people during the 1980's.  Before 1990, DRD had no business activity other than the mobile home rental activity and the two loans.

Pace withdrew from DRD in 1986, leaving Trisch and petitioner as equal partners.  The partnership distributed some partnership assets to Pace when he left DRD, leaving DRD primarily with the property in Truth or Consequences.  On December 29, 1987, Trisch, in DRD's name, bought mobile homes in Kerr County, Texas.

On January 5, 1988, Trisch registered DRD as an assumed name in Kerr County. Trisch listed only himself on the assumed name certificate for DRD.

Petitioner moved from Houston to San Antonio in 1988. He received rental payments and deposited them in a bank account for DRD in San Antonio in 1989. Petitioner closed this account in late 1989 or early 1990. After 1989, Trisch handled all DRD activities, and petitioner was not involved in DRD. Trisch told petitioner (on a date not stated in the record) that DRD was being dissolved and had been inactive since about 1990.

C. Trisch's Engineering Services

During the years in issue, DRD received about $4.8 million for engineering services that Trisch provided to various companies (engineering income).[2] Petitioner never agreed that DRD would provide engineering services. Petitioner did not know about or perform any of these engineering services, or know about or control any of the engineering income.

Pace paid DRD for engineering services that Trisch performed for Pace's business from 1989 to 1993. Pace understood that DRD was Trisch's sole proprietorship during those years. Bankers who

---

[2] Respondent determined that DRD received a total of $4,818,314 in engineering income: $713,775 in 1989; $1,018,500 in 1990; $1,134,377 in 1991; $782,000 in 1992; and $1,169,662 in 1993.

dealt with Trisch in the years in issue believed that DRD was Trisch's sole proprietorship.

From 1989 through 1993, Trisch maintained an account at the Bank of Kerrville in the name of "Don Trisch dba Diversified Resources and Development" (DRD Bank of Kerrville account). Petitioner was not authorized to deal with that account.

Trisch and Linda Lashley (Lashley) were friends during the years in issue and were married to each other at the time of trial. Trisch or Lashley deposited most of the income from Trisch's engineering services in the DRD Bank of Kerrville account during the years in issue. They also deposited a substantial part of the DRD income in Lashley's personal account. Petitioner never authorized Lashley to act for him. During the years in issue, Trisch and Lashley used DRD funds solely for themselves and their family members. Petitioner received no distributions of DRD funds during those years.

D. Trisch's Purchase of Thistlewood Farm With DRD Funds

During the years in issue, Trisch put some assets he had bought with money he earned doing business as DRD in Lashley's name. The most significant of those assets was a 207-acre farm known as Thistlewood Farm (Thistlewood). Trisch and Lashley used $525,000 of the DRD funds in the Bank of Kerrville to buy Thistlewood on July 8, 1991. The source of these funds was a payment by Brandon & Sons for engineering services provided by

Trisch doing business as DRD. Petitioner did not know about this payment or the purchase of Thistlewood. Trisch and Lashley operated the farm.

E. Income Tax Returns

1. DRD's Returns

Petitioner sent DRD records that he had for 1989 to Dennis Brady (Brady), DRD's tax preparer at the time. Brady sent DRD's Form 1065, U.S. Partnership Return of Income, for 1989 to petitioner. Petitioner sent it to Trisch. Trisch and Brady made changes in the return. Petitioner did not see the 1989 return after he sent it to Trisch. Trisch reported engineering income on DRD's 1989 return. The record does not show whether the engineering income was reported on the DRD return petitioner saw, and DRD's 1989 return does not specify that the amount reported is engineering income. John L. Givens III (Givens), C.P.A., who was Trisch and Lashley's accountant, replaced Brady as DRD's accountant on a date not stated in the record.

Trisch gave the accountants who prepared DRD's tax returns for 1990 through 1993 summaries of DRD's income and expenses for those years. The engineering income reported on DRD's tax returns was largely offset by the deduction of payments made for personal expenses of Trisch, Lashley, and their family members. Trisch signed DRD's tax returns for the years in issue.

On October 16, 1997, Trisch filed amended Forms 1065 and Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for DRD for 1992 and 1993 showing that all DRD income, deductions, losses, and credits were attributable to him.

2.   Petitioners' Individual Income Tax Returns

Petitioners timely filed joint Federal income tax returns for 1989 through 1993.  Petitioners received Schedules K-1 for DRD that showed the following:

| Year | Capital account beginning of year | Capital account end of year | Ordinary income trade or business | Net income(loss) rental real estate activities |
|------|-------------|-------------|-------------|-------------|
| 1989 | $139,590 | $159,264 | $55,964 | ($38,754) |
| 1990 | 159,263 | 188,127 | 21,099 | (15,472) |
| 1990[1] | 159,263 | 187,777 | 70,746 | (32,432) |
| 1991 | 187,777 | 154,783 | (5,105) | (23,394) |
| 1992 | 154,783 | 341,030 | 223,893 | (44,493) |
| 1992[2] | 154,783 | -0- | -0- | -- |
| 1993[3] | 279,171 | 351,003 | 88,796 | (36,876) |
| 1993[4] | -0- | -0- | -0- | -0- |

[1]  The amounts for the second entry for 1990 are those reported on DRD's amended return for 1990.
[2]  The amounts for the second entry for 1992 are those reported on DRD's amended return for 1992 filed in October 1997.
[3]  There is no explanation in the record for why the capital account beginning in 1993 is not the same as the ending capital account for 1992.
[4]  The amounts for the second entry for 1993 are those reported on DRD's amended return for 1993 filed in October 1997.

Petitioners received the Schedules K-1 each year after they had prepared their individual returns for the year, except for 1989.  Petitioners believed that their income tax returns had to be consistent with the Schedules K-1, so they filed amended

returns that conformed to the Schedules K-1.  Petitioner did not understand from the Schedules K-1 that DRD had a substantial amount of business activity other than real estate.

F.   Petitioners' Lawsuit Against Trisch and DRD

Petitioners wrote letters to Trisch or Givens late in 1993 or early in 1994 to ask for copies of DRD's Federal income tax returns but they did not get them until after the years in issue.

On May 23, 1996, petitioners sued Trisch, Lashley, DRD, and others.[3]  Petitioners asserted that petitioner and Trisch were equal partners in DRD until 1995, and sought a termination of DRD, an accounting of DRD's assets, and a distribution to petitioner of 50 percent of DRD's assets.  Petitioners first learned the amounts of engineering income and deductions Trisch and Lashley had received and reported when petitioners received responses to their requests for discovery in their lawsuit against Trisch.

## II.  OPINION

A.   Whether Petitioner and Trisch Were Partners in DRD in the Years in Issue

The parties agree that DRD was a partnership until 1989.  However, petitioners contend that petitioner and Trisch were not

---

[3]  Petitioners also sued Gary Broach and Ouida Broach, and High Wilderness Land & Cattle Co., a Texas partnership.  Ouida Broach was an assistant for Lashley.  Gary Broach was Ouida Broach's husband.  Petitioner, Trisch, Lashley, and Gary Broach were partners in High Wilderness Land & Cattle Co.

partners in DRD after 1989 because petitioner intended their partnership to cease in 1989. We disagree.

A partnership terminates for Federal tax purposes if (1) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership; or (2) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits. See sec. 708(b)(1). Neither of these requirements was met during the years in issue. To withdraw as a partner under Texas law, a partner must notify the partnership of his or her intent to withdraw, or another event of withdrawal (e.g., expulsion, death, or bankruptcy) must occur. See Tex. Rev. Civ. Stat. Ann. art. 6132b, sec. 6.01 (Vernon 1990). Petitioners do not contend that any of these things occurred during the years in issue. Thus, we conclude that petitioner was a partner in DRD during the years in issue.[4]

---

[4] Respondent offered the settlement agreement for petitioners' suit against Trisch (see par. I-F, above) into evidence to show that petitioner and Trisch were partners during the years in issue. At trial, we ruled that it was not admissible under Fed. R. Evid. 408 because it was offered to show the validity of petitioner's representation in his suit against Trisch that they were partners during the years in issue. Respondent's request that we admit the settlement agreement is moot because we have concluded that petitioner and Trisch were partners in the years in issue based on other evidence in the record.

B.    Whether Engineering Income That Trisch Earned From 1989
      Through 1993 in the Name of DRD Was Partnership Income

      1.    Whether Providing Engineering Services Was a
            Partnership Activity

Income from personal services earned outside the scope of a partnership is not partnership income.  See Hamm v. Commissioner, 683 F.2d 1303, 1304 (10th Cir. 1982) (because the partnership existed solely to practice law, the income from Mr. Hamm's services as a judge was not partnership income because those services were outside the scope of his partnership duties), affg. T.C. Memo. 1980-154; Commissioner v. Smith, 285 F.2d 91, 96-98 (5th Cir. 1960) (receipts from whiskey sales that one partner illegally collected without the knowledge of or benefit to the other partners were not partnership income), affg. Griffin v. Commissioner, T.C. Memo. 1958-210.

In Schneer v. Commissioner, 97 T.C. 643, 654-656 (1991) (Court reviewed), we discussed Hamm v. Commissioner, supra, and stated that the language in that opinion about the scope of a partnership was unnecessary because the partnership had ceased to exist before any of the income in question was earned.  The issue in Schneer was whether a law partner was personally liable for tax on income he had earned before he assigned it to a partnership.  Although we held that the income at issue in Schneer was partnership income, it is clear that the issue in Hamm, Smith, Schneer, and in the instant case is whether a

partner earned income as part of the partnership's activity or on his own.

Respondent contends that the engineering income that Trisch earned doing business as DRD from 1989 through 1993 was DRD partnership income. We disagree. Petitioner, Trisch, and Pace established DRD as a partnership to buy and hold rental real estate. Trisch's engineering services were outside the scope of his partnership with petitioner. Petitioner and Trisch did not combine their money or labor to provide engineering services, and there was no community of interest in the profits or losses from engineering services. Trisch and Lashley concealed Trisch's engineering services activities from petitioners, used the engineering income for personal purposes, and concealed from petitioners income and assets that they bought with that income. Petitioner did not receive any benefit from the income from engineering services. He did not intend that the engineering income be a DRD activity because he did not know about that activity.

Respondent speculates that Trisch's real purpose in concealing income may have been to conceal it or DRD's assets from his former spouse. There is no evidence to support that theory.

Respondent contends that, under Commissioner v. Culbertson, 337 U.S. 733, 741-742 (1949), Trisch's engineering services were

partnership income.  We disagree.  The issue in <u>Culbertson</u> was whether to recognize a family partnership for Federal tax purposes.  Here, our inquiry is whether a particular activity was within the scope of an existing partnership.

2.    <u>The Schedules K-1</u>

Respondent contends that petitioners knew about Trisch's engineering income because Trisch reported that income on DRD's tax return, and allocated 50 percent of it to petitioner on the Schedules K-1 which petitioner belatedly received from DRD.  We disagree.  First, petitioner did not realize from the Schedules K-1 that Trisch had engineering income.  Second, knowledge of the engineering income does not necessarily make it partnership income.  See <u>Mayes v. United States</u>, 207 F.2d 326 (10th Cir. 1953) (partners knew of wages from an accounting firm that were found not to be partnership income); <u>Mayes v. Commissioner</u>, 21 T.C. 286, 288-289 (1953) (partners knew of income from services provided as an airplane mechanic that was found not to be partnership income).

3.    <u>The Rapid Manufacturing Sign</u>

Respondent points out that petitioner testified that he asked that a sign with the name Rapid Manufacturing on it be placed at a business called Diversified Fabricators Insulators and Constructors (DFIC), which respondent contends DRD owned.

Respondent contends that this shows that petitioner knew about the engineering income. We disagree.

Petitioner testified that he owned 50 percent of the outstanding shares of Rapid Manufacturing, a corporation that sold materials to DFIC. Petitioner asked to have a sign with Rapid Manufacturing's name on it installed at the DFIC plant to help Rapid Manufacturing. Petitioner did not connect DRD to DFIC.

Respondent's agent testified that DRD owned DFIC. She said that DRD became a partner in the DFIC partnership, but she did not say when that occurred. She then vaguely suggested that petitioner was involved with DFIC, without describing how, except through her belief that DRD owned DFIC. Respondent cites Exhibit 104-R to support the claim that DRD owned DFIC. Exhibit 104-R is a diagram that respondent's agent prepared which was not admitted into evidence. Respondent's argument about the Rapid Manufacturing sign is at best speculation, and it is not more persuasive than other evidence showing that petitioner did not know about the engineering income.

4. Capital Contributions

Respondent contends that Trisch's contribution to DRD was to perform engineering services and that petitioner's contribution was to provide capital. While that might be a possible

arrangement between two partners, the record shows that was not the arrangement here.

Respondent points out that the Schedules K-1 show that petitioner had a beginning capital account for 1989 of $139,590 and an ending capital account for 1993 of $351,003. However, we do not infer from the Schedules K-1 that DRD provided belatedly to petitioner that petitioner and Trisch intended the engineering services to be a partnership activity.

5.     <u>Lack of Testimony From Trisch</u>

Respondent contends that we should infer from Trisch's failure to testify in this case that, if he had testified, he would have testified against petitioners. We disagree.

If a witness is equally available to both parties and neither party calls that witness at trial, then no adverse inference is warranted. See <u>United States v. Rollins</u>, 862 F.2d 1282, 1297-1298 (7th Cir. 1988); <u>Kean v. Commissioner</u>, 469 F.2d 1183, 1187-1188 (9th Cir. 1972), affg. on this issue and revg. on another issue 51 T.C. 337 (1968). An uncalled witness is not equally available to the party requesting that the inference be drawn against the other party if that witness' relationship to that other party suggests that the witness is likely to favor that other party. See <u>United States v. Rollins</u>, <u>supra</u>; <u>Kean v. Commissioner</u>, <u>supra</u>; <u>McClanahan v. United States</u>, 230 F.2d 919, 925 (5th Cir. 1956).

Trisch's relationship to petitioner does not suggest that Trisch's testimony would favor petitioner.  Respondent listed Trisch as a witness on the pretrial memorandum submitted to the Court; petitioners did not.  Neither party called Trisch to testify.  We infer that Trisch was equally available to both parties, and we do not apply the adverse inference rule.

6.    Conclusion

We conclude that Trisch's engineering income was not income of the DRD partnership in the years in issue.[5]

C.    Whether Real Estate Rental Income Earned Doing Business as DRD From 1989 Through 1993 Was Outside the Scope of the Partnership

Petitioners contend that any DRD real estate rental income or loss in the years in issue was not partnership income because Trisch owned the properties that generated rental income or loss during the years in issue.  We disagree.

Trisch bought mobile homes in New Mexico and Texas in DRD's name.  Real property acquired in the name of the partnership is partnership property.  See Tex. Rev. Civ. Stat. Ann. art. 6132b, sec. 2.05(a)(1) (West 1990).  DRD was formed to own rental real property.  DRD did not terminate for Federal tax purposes before Trisch acquired that property.  See par. II-A, above.  Income earned within the scope of a partnership is partnership income.

_____

[5]  For similar reasons, we conclude that farming was not a DRD activity.

See Starr v. Commissioner, 267 F.2d 148, 149 (7th Cir. 1959), affg. on this issue and others and revg. and remanding on another issue T.C. Memo. 1958-50.  We conclude that DRD's real estate rental income earned and losses incurred during the years in issue were within the scope of the partnership.

D.    Whether Tax Years 1992 and 1993 Should Be Dismissed From This Case as Moot

Petitioners contend that tax years 1992 and 1993 should be dismissed from this case as moot on the grounds that Trisch filed amended returns for DRD for those years in which he reported that all DRD income, deductions, losses, and credits were attributable to him.  We disagree.  DRD's amended returns do not convince us to disregard the rest of the record in this case, which shows that DRD had real estate rental income earned and losses incurred in 1992 and 1993 within the scope of the partnership.  See par. II-C, above.

E.    Whether Petitioners Are Liable for the Accuracy-Related Penalty

Respondent contends that petitioners are liable for the accuracy-related penalty under section 6662 for each year.  We disagree.  Petitioners filed amended returns based on the Schedules K-1 that they belatedly received each year from DRD.  There was nothing in the schedules that reasonably alerted them to the fact that the schedules were based on understated income

or overstated deductions.  We conclude that petitioners are not liable for the penalties for negligence under section 6662.

To reflect the foregoing and concessions,

<u>An order will be issued denying petitioners' motion to dismiss tax years 1992 and 1993, and decision will be entered under Rule 155</u>.